## LEELANAU COUNTY BOARD OF ROAD COMMISSIONERS *v.* BUNEK.

1. HIGHWAYS AND STREETS—CREATION BY USER.

   To constitute a highway by user, there must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive (CL 1948, § 221.20).

2. SAME—ACCEPTANCE OF IMPLIED DEDICATION—MAINTENANCE.

   To establish a highway by user not only must the general public use it and travel upon it as a thoroughfare, but the implied dedication must be accepted by the public authorities and the way taken in charge and maintained as other highways (CL 1948, § 221.20).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 25 Am Jur, Highways §§ 11–14.
[3, 4] 25 Am Jur, Highways § 12.

3. SAME—PERMISSIVE USE OF PRIVATE ROAD.
  A mere permissive use of a private road by the general public, however long continued, will not make it a public highway.

4. SAME—PUBLIC USE OR POSSESSION—EVIDENCE.
  Evidence adduced by county road commissioners in suit to enjoin obstruction of road failed to show exclusive, continuous uninterrupted, open, and notorious occupation of roadway in question along section line by public authorities as a public road during any one 10-year period (CL 1948, § 221.20).

Appeal from Leelanau; Brown (Charles L.), J. Submitted October 12, 1955. (Docket No. 81, Calendar No. 46,570.) Decided March 1, 1956.

Bill by Board of County Road Commissioners of Leelanau County, a municipal body corporate, against Joseph Bunek and June Bunek to enjoin obstruction of road claimed to be public highway. Decree for plaintiff. Defendants appeal. Reversed.

*Harry T. Running,* for plaintiff.

*Campbell & Campbell,* for defendants.

REID, J. Plaintiff board filed its bill to enjoin the defendants from obstruction of a road in Bingham township, Leelanau county, claimed by plaintiff board to be a public highway. Defendants deny that the road in question is a public highway but claim that it is a private lane across the lands of defendants. From a decree for plaintiff, defendants appeal.

No direct grant to the public authorities of the lands for public highway purposes was ever made. Plaintiff board counts on CL 1948, § 221.20 (Stat Ann § 9.21), as a foundation of the rights of plaintiff:

"All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or

other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use, shall be 4 rods in width, and where they are situated on section or quarter section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be 2 rods in width on each side of such lines."

Plaintiff claims 5 separate periods of building, maintenance and repair of the road over a greater span of years than required by the statute. We briefly illustrate the nature of these 5 periods. The *first* labor claimed by plaintiff to have been performed by the public authorities on the road would be sometime between 1913 and 1923. Perry Lindley, who was Bingham township supervisor in 1931, testified:

"I first recall this road a long time ago. I couldn't give you the exact date that we had the commissioner open it—the township. I would say 30 or 35 or maybe 40 years ago. At that time it was opened by the township road commission under instructions of the township board. The township board ordered the commissioner to open it at that time. It was then opened to the lake. The Bunek family was living there at that time. * * * The road was opened, the township spent money to open the road. * * * I recall it was opened."

Mr. Lindley fails to say that he himself saw the work done on this particular stretch of the road, and his reference to the date is so vague that it would be difficult to place reliance upon his testimony. Defendant Joseph Bunek testified:

"During the time from 1914 to 1931, I never saw or had any indication or reason to believe that there had been any road equipment along my lane."

There is nothing in the record to indicate that the public authorities maintained the road in any fit condition for travel as other roads from the time indicated by Mr. Lindley until plaintiff's claimed *second* work done by the public referred to by plaintiff as having occurred in 1924, and as indicated by plaintiff's witness Grohinski, who testified:

"I was hired by David Priest at one time to move a fence back. He was overseer as best I can remember in the old style. There was some stuff in closer by the lake, and they were arguing about a fence. He was ordered by the township highway commissioner to hire somebody, and Mr. Priest hired me. We moved up the line stones about a mile and a half from the lake, and we staked them out as straight as we could; and we went straight down to the lake so people could see where the line was to the best of our knowledge. * * * We cut some brush and stumps. We put them stakes and old stones in there. * * * That was about 1924."

There is nothing shown in the testimony that the public did anything further after 1924 until sometime about 1935 or 1936 (the *third* period of work claimed by plaintiff) which seems to be the work referred to by witness Bartunek, hereinafter cited. At this third period there is no proof of any act done by public authorities on this road in question as a public road, and for public benefit. It was only work done by a public officer but at the request and for the benefit of defendants, the owners of the land.

The *fourth* period, according to plaintiff's claim, was in 1945. Witness Behm testified he put gravel in a hole in the road, and patched up the soft spots. Witness Strong testified to some grading by the public in 1935, evidently referring to the occasion

testified to by witness Bartunek. Also, witness Strong testified to work done in 1945 by the public. The preponderance of evidence shows that the public did no work on the road from 1945 to about 1951.

The *fifth* occasion claimed by plaintiff was somewhere about the year 1951 when the public took over and for the first time, put the road in question into a condition somewhat similar to other public roads. Work was done by public authorities for public benefit in 1951 but of course the time since elapsed is short of a 10-year period, and, hence, fails to establish the plaintiff's claim under the hereinbefore quoted statute.

Plaintiff's showing amounts to no more than this, that at 2 or 3 periods some effort was made to transform the Bunek road into a public highway, but the efforts were not followed by exclusive and continued use by public authority; on the contrary, the public authorities after each such effort apparently ceased to pay attention to the lane or road in question for several years.

Competent testimony was produced by defendants to establish defendants' claim as to the road. Defendants' parcel of land lies on the east shore of Lake Leelanau described as government lot 4, section 1, town 29 north, range 12 west. The property lies between Lake Leelanau on the west and a black-topped road (county road 641) on the east. The section line between sections 1 and 12 seems to be the southerly boundary line of the property of defendants. Defendant Joseph and his brothers and sisters were raised on that farm. Defendant Joseph has been on the farm since 1914 with an interval of army service. For as long as defendant Bunek and his sisters can remember, there was a passageway from county road 641 westward to the shore of Lake Leelanau along the southern extremity of the Bunek property and known as Bunek lane, which was about

400 feet long. For many years the neighbors and friends of the Buneks came from their neighboring farms to the waters of Lake Leelanau, using Bunek road or lane as the means of access from the county road 641 to the lake. This was done with the knowledge and consent of the Buneks, both the present defendant Joseph and his father who owned the farm before him. In the earlier years when defendant Joseph Bunek and his sister Rose Dechow tended their father's cattle, driving them along the lane in question to the lake for water, the lane itself was marked by fences.

The first time after 1924 that the county highway department claims to have done any work on the Bunek road in dispute was about 1935, when the county road commission's superintendent Frank Bartunek was grading county road 641, and he testified:

"We had this surplus dirt, see, and I asked Joe if he had any place to put it, and he said 'Put it down here,' so that is where we put it.

"*Q.* And is that on the road in dispute, that we have been talking about here?

"*A.* Yes.

"*Q.* When you put in the fill dirt, did you also put gravel on top of it?

"*A.* No. It was already gravel mixed."

This seems to be the same occasion as testified to by Mrs. Dechow, sister of defendant Joseph, as follows:

"I recall in 1935 and 1936 when the WPA men and equipment came and rebuilt this road. They did that to all the people's driveways and approaches and leveled off where they had to do that."

In 1951 some trouble arose about transient orchard workers from neighboring farms coming to the lake shore for picnics and parties; also, the plaintiff com-

mission erected a sign indicating, "public beach."
Joseph Bunek and one Skiba, the owner of the land
immediately south of the Bunek property, erected a
no trespassing sign and barricade across the east
end of the lane or roadway in question.  This result-
ed in their being arrested and tried for barricading
the road.  The jury disagreed and the case was
dropped.  Thereafter, in 1953, the road commission
began this suit.  In justification of its claim that the
road in question is a public highway, plaintiff of-
fered in evidence a map dated 1885 of Bingham town-
ship roads, which indicated as a highway, the road
or lane in dispute.  There is no testimony to show
that any public authority had before 1885 ever done
any work on this road in question.

One item of testimony relied on by plaintiff is, in
brief form, shown as follows:  Isadore Schaub tes-
tified that in about 1891,

"My dad was running a steam engine and a thresh-
ing machine, and we had to draw water, and we had a
tank that we had to dip with a pail, and they stopped
us from going to the lake and getting water.  So my
father, John A. Schaub, he had this road laid out
so they wouldn't bother him.  He asked them to let
him go through this year, until the season was over,
then he laid the road out.  Julius Otto and Fahnus,
the 2 neighbors, stopped him from going down there.
The rail fence was removed then.  The road was laid
out and the fence was spread apart."

This merely indicates an assertion on the part of
somebody not the owner of the farm of his supposed
right to go down across the road or lane in question.
He is not shown to have been acting under any grant
of authority from the public.

In 1898, the commissioner of highways of Bingham
township in a written notice recited that the road in
question was a highway, and ordered that a fence
that ran along the section line on the course of the

road in question "be removed so that said highway shall be open and unobstructed and of the width originally intended, which was 4 rods." It seems the fence at that time was removed but there is no convincing showing that the public authorities did anything whatsoever with the road in question from 1898 until 1935, the occasion testified to by witness Bartunek (corroborated by Mrs. Dechow), hereinbefore referred to, excepting that witness Grohinski testified that in 1924 he was hired by the highway overseer to move out of the road the fence which had (apparently after 1898) been put back into its former place by defendants.

Plaintiff fails to show that for any period of 10 years before 1951, the road in question was placed and maintained in such a situation for general use by the public as would comply with the *Chapman Case, infra.* Some members of the Bunek family testify to driving cattle along the lane or road in question during this period, also furnishing to their patrons occupying cottages of defendants on the lake, a means of access to their cottages. Since 1914, except for a few brief intervals, there appears to have been a fence along the section line interrupting the use of the road as a 4-rod wide highway.

In *Alton* v. *Meeuwenberg,* 108 Mich 629, we say (syllabus 4):

"To constitute a highway by user, there must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive."

See, also, *Missaukee Lakes Land Company* v. *Missaukee County Road Commission,* 333 Mich 372 (syllabus 9).

In *Chapman* v. *City of Sault Ste. Marie,* 146 Mich 23, we say at p 29:

"The learned trial judge correctly instructed the jury that 'not only the general public must use it and travel upon it as a thoroughfare, but the implied dedication must be accepted by the public authorities and the way taken in charge and maintained as other highways.'"

In *Missaukee Lakes Land Company* v. *Missaukee County Road Commission, supra,* we say (syllabus 6):

"A mere permissive use of a private road by the general public, however long continued, will not make it a public highway."

See, also, *Thunder Mountain Heights Land Corporation* v. *Van Buren County Road Commission,* 342 Mich 88.

Clearly the evidence fails to show exclusive, continuous, uninterrupted, open, and notorious occupation of the roadway in question by public authorities as a public road during any one 10-year period.

The decree appealed from is reversed.   Costs to defendants.

DETHMERS, C. J., and SHARPE, SMITH, BOYLES, KELLY, and CARR, JJ., concurred.

BUTZEL, J., did not sit.

BLACK, J., took no part in the decision of this case.