# APRIL TERM, 1887.

65 241
79 559,

-65 241
146 ² 29

HUGH IRVING ET AL. V. FRANK FORD ET AL.

*Highways by user—Dedication—Acceptance by authorities—Sidewalks—Rights of lot-owners—Equity.*

1. The owners of land adjoining a *legally* laid·out public highway platted a portion thereof into village lots, making the highway the boundary line of the lots adjoining it, which lots were thereafter conveyed with reference to such plat or by metes and bounds. The purchasers erected their residences at varying distances back from said street, which were afterwards converted into hotels and other business property, and later other buildings were erected on nearly the same line as the earlier ones. In front of these buildings, and extending into the space between them and the street, some of the owners built stoops with permanent roofs or platforms, as suited their convenience or wish, and without consulting the village authorities (it having been incorporated), and such intervening space was also used and occupied for other *private* purposes. Such space was also used, where not obstructed, by the public for passage to and from such private buildings and along said street, but never for the purpose of traveling through the village, the original street being ample for that purpose. Sidewalks were constructed by the owners of said lots in front of their buildings, occupying a portion of such intervening space, and finally the village authorities caused the lines of said street to be re-established, and ordered the construction of sidewalks upon said re-established lines; whereupon certain of said property-owners filed a bill to enjoin the construction of such walks, claiming that such intervening space had become a part of the highway by user, and that the building of such walks would obstruct it and injure complainants and their business.

*Held,* that an acceptance by the public of such strip of land was not made out, and that merely passing over it for any length of time is not alone sufficient to convert it into a public highway, but it must have been accepted as such by the public authorities; and where, as in this case, the public have a highway 100 feet in width for their use, the testimony to prove such acceptance must be unequivocal and satisfactory.

65 MICH.—16          [241]

2. To constitute a dedication of land by user, or in any other manner, for highway purposes, there must be an intention, express or implied, to dedicate, that is, either a grant or relinquishment of the land to the use of the public, which must be accepted by the public authorities having jurisdiction as a public highway.

3. Sidewalks laid by property-owners on their own property, or in the public streets in front of their premises, belong to such land-owners, subject to use by the public, and cannot be removed by the corporate authorities without their consent. *Rogers v. Randall*, 29 Mich. 41.

4. A court of chancery has no jurisdiction to control the *discretion* of the municipal authorities of an *incorporated* village as to *when* or *where* walks shall be laid in the streets of such village.

Appeal from Oakland. (Stickney, J.) Argued January 4, 1887. Decided April 14, 1887.

Bill to enjoin the obstruction of an alleged highway. Complainants Hugh Irving and Orrin Poppleton appeal from decree dismissing bill. Affirmed. The facts are stated in the opinion.

*Baldwin & Draper*, for complainants:

Cite on the requisites of dedication of land, and its acceptance for public use, the following authorities: Wood, Nuisances, § 239; *Knight v. Heaton*, 22 Vt. 483; *Hall v. McLeod*, 2 Metc. (Ky.) 104; *Bush v. Johnston*, 23 Penn. St. 209; Washb. Easem. 138; *Woodyer v. Hadden*, 5 Taunt. 126; *Jarvis v. Dean*, 3 Bing. 447; *Hunter v. Trustees*, 6 Hill, 407; *Smith v. State*, 3 Zab. 130; *Baker v. Johnston*, 21 Mich. 340; 2 Dill. Corp. § 638.

*Thomas J. Davis*, for defendants:

User by the public, without official acceptance or exercise of authority over alleged dedicated property in cities and villages, will not create a highway: *People v. Beaubien*, 2 Doug. 256; *People v. Jones*, 6 Mich. 176; *Tillman v. People*, 12 Id. 401; *Detroit v. D. & M. R. R. Co.*, 23 Id. 173.

CHAMPLIN, J. On the twentieth day of August, 1880, complainants, seven in number, filed their bill of complaint in the circuit court for the county of Oakland, in chancery,

and therein set forth that they severally own lots in the village of Birmingham, in said county, which are particularly described in the bill. These lots complainants allege front upon Saginaw street, in the said village. Three of the complainants allege that Saginaw street, in front of their premises, is 134 feet in width, and three others allege that in front of their premises it is 116 feet in width, at least. The other does not state the width. It is alleged in the bill that their respective lots, except that of Benjamin Daniels, which fronts on Mill street, are bounded by Saginaw street, and all but one are described as lots according to certain named plats of the village of Birmingham.

The bill further alleges that, for the period of more than 40 years, the space called Saginaw street, being about the width of 130 to 135 feet, had been continually used as a public highway, and recognized as such public highway; that the space upon Mill street at the south-easterly corner of the premises of the defendant George Blakeslee, and also in front of his building, had been used continuously for public highway purposes for more than 40 years.

That in the year 1864 the village of Birmingham was organized under the general statutes of the State, by the board of supervisors, and a president and six trustees were then elected; that afterwards, up to the year 1880, the corporation officers from time to time ordered the owners of lots on Saginaw street and Mill street to construct sidewalks in reference to said streets, as of the width set forth and claimed in complainants' bill, and such owners, including the complainants, expended large sums of money, and put down sidewalks in front of their several places of business upon the street, and as it had been used from time immemorial; that, by the survey of the old Saginaw turnpike, which was constructed by the authority of the United States, the width of the same was 100 feet; that the buildings upon Saginaw street, which is the principal business street, were all erected and built upon

the line as set forth in complainants' bill, and not in anywise in regard to the turnpike line or street of the width of 100 feet; that the complainants made the improvements, putting down sidewalks as required by the ordinances passed by corporation officers; that until recently all the sidewalks upon Saginaw street were constructed as for a street the width claimed by the complainants.

That George Blakeslee, Edward L. Jennings, Benjamin Leach, Mrs. Agnes Rogers, and James Hoffman, respectively, own lots fronting on the westerly side of Saginaw street; that defendants Mrs. Alice Daines, Frank Hagerman, Rose Hagerman, Lewis Converse, and Benjamin Thorn own, or claim to own and occupy or have, some lots and land upon the easterly side of said Saginaw street; that defendant Frank Ford is the acting president, and defendants Frank Hagerman, John Baldwin, Walter North, McAllister Randall, Edgar Lamb, and Eugene Brooks are trustees, or acting trustees, of the village of Birmingham; and that Samuel C. Mills is marshal, and George Blakeslee street commissioner.

The bill proceeds to state that in April the officers of the village conspired with George Blakeslee and others, defendants, and persons unknown to the complainants, to change and alter the limits of Saginaw street.

That long ago the old limits of the road, as laid out by the United States, to the width of 100 feet, had become lost and obliterated; that no buildings or improvements had been constructed or made with regard to any such line up to the year 1880, when the village officers, in the interest especially of George Blakeslee, who was then street commissioner, commenced proceedings to reduce the width of Saginaw street, where it was nearly 136 feet in width, to a width of 100 feet; that neither George Blakeslee, nor others of the defendants whose lots will be enlarged by the change, have paid any consideration for the land they will acquire; that the lots owned by the complainants on Saginaw street will be lessened in

value; that the attempt to diminish the width of Saginaw street by the officers of the village is illegal, and without authority; that unless the defendants are enjoined and restrained from diminishing the said street in width, and from ordering sidewalks to be put down, or putting them down as intended, Saginaw street, as it has been for more than 40 years used as a public highway, will be obstructed, and will work an irreparable wrong and injury to the complainants, and to the several lots and lands, and to all persons using said street.

The prayer of the bill is that the said president and trustees and defendants be enjoined and restrained from obstructing any part of Saginaw street by placing upon the same any stone, earth, lumber, or building materials of any kind, and from taking for the private use of any of the defendants any part of said street in front of their respective lots, as said street had been used for more than 40 years, and from constructing sidewalks in said street at any greater distance from the easterly and westerly lines of said street than such as were laid prior to the first day of January, A. D. 1880; that said George Blakeslee be enjoined from obstructing any part of Mill street, and the open space southerly and easterly of his store building, as such space was used up to January 1, 1880; and that the defendants remove all obstructions to the width stated, and be enjoined from erecting any buildings or fences or sidewalks that shall obstruct said streets.

The defendants filed a joint and several answer. They admit that Birmingham is an incorporated village, and the official character of the defendants alleged in the bill; that many years ago, when the Territory of Michigan was under the jurisdiction of the federal government, the Saginaw turnpike, so called, was laid out and established by federal authority, 100 feet wide, and that it passed through Birmingham, and was established on the lines stated in the bill, and has ever since that time been used as a highway, and through

the village of Birmingham, a distance of about 900 feet, it has ever since continued to be used as a public highway of 100 feet in width, which width is in front of all the premises described in the bill; that the early settlers of Birmingham built their houses and placed them several feet back from the line of the street for their own convenience, and without any intention of dedicating the lands lying between such houses and the street to the public for highway purposes, and, for their own convenience or pleasure, the owners of such premises have built stoops or platforms in front of their buildings, of various widths and heights, and used the space between their buildings and the line of the street for various purposes as their private property, and no action was ever taken by any public authority to establish a street line other than the lines of the 100-foot street.

They admit that John Hamilton platted portions of his land, and recorded the same, and that the plat bounds the lots by the line of the 100-foot street, as claimed by defendants; that John W. Hunter also platted and recorded portions of his land into lots, and bounded the lots by the line of the street 100 feet in width, and that conveyances of said lots have been made since with reference to said boundary; that complainants' title deeds are so described and bounded; that the street lines having become obscure or obliterated, the village authorities authorized a resurvey of the street lines, and such resurvey was made by H. S. Terry, county surveyor, which was accurate, and adopted by the village board as correct, and became a part of the public records of the village; that afterwards, and in June, they ordered sidewalks to be constructed in Saginaw street upon the lines as established by the Terry survey; that prior to this no sidewalk had ever been established by the said board of trustees, or officers of the village, or by any other public officers or body authorized to direct the construction of the same; that the walk has been so constructed, but the complainants Irving and Popple-

ton tore up the same in front of their premises. They say they have acted in good faith as officers of the village, and according to their best judgment and discretion.

Defendant Blakeslee admits that he owns the lot fronting on Saginaw street, and claims to own to the 100-foot line; admits that he has made preparation to build thereon; admits that the public have traveled across portions of it that have been unoccupied, as they have unoccupied land adjacent to the street, but with no intention of making the same a part of the public highway.

The defendants Jennings, Leach, and Rogers admit they own on the west side of Saginaw street, and that such lands have been conveyed by such description, and they have claimed to the 100-foot line; and they deny that they have at any time recognized Saginaw street as extending westerly from said line, or any part of the land, as a part of the street or highway.

Defendants Thorn, Converse, Daines, Frank and Rose Hagerman, make the same denial as to any lands owned or occupied by them easterly of said 100-foot line, and state that whatever travel has been across said land has been for the convenience of the lot-owners, and not for the convenience of the public.

Replication was filed, proofs taken, and hearing had in the circuit court, which resulted in a decree dismissing the bill of complaint. From this decree Hugh Irving and Orrin Poppleton appealed.

The claim of complainants is that the lands adjacent to the Saginaw turnpike, and extending back to the buildings in the village of Birmingham, have become a public highway by user.

The testimony, which is very voluminous, shows that the early settlers of Birmingham placed their residences a short distance back from the line of the turnpike, but at different distances, as suited their convenience; the distance, as shown

in the bill of complaint, varying so that the distance between buildings upon opposite sides of the street was from 134 to 116 feet.

The earliest settlers and proprietors of the village were John Hamilton and John W. Hunter, each of whom platted a portion of their land into village lots, making the line of the Saginaw turnpike the boundary line of such lots as adjoined such turnpike. It thus appears that the platting was subsequent to the laying out of the road, and that the original proprietors did not, by the act of platting, intend to dedicate the land adjoining the turnpike to the public use. The lots have since been conveyed with reference to the recorded plats, with one or two exceptions, where they were described by metes and bounds. These early residences were afterwards turned into hotels and other business property, and later other buildings were erected nearly upon the same line as the earlier buildings, and the spaces between such buildings and the street, varying in width 8 to 17 feet, were left open for the private convenience of the owners of the property, as a means of ingress and egress to their respective places of business. In front of these buildings, and occupying a portion of the space aforesaid, the owners in many instances built stoops with permanent roofs or platforms, as suited their convenience or wish, without applying to or obtaining permission from the corporate authorities; and these structures were of different widths, and such intervening space, in some instances, was used and occupied for other private purposes. The testimony shows, beyond contradiction or doubt, that the public have used the intervening space for passage to and from the premises owned by the individuals, fronting on what is now known as Saginaw street, known also as the Saginaw turnpike, and also along the street, whenever occasion required, where it was not obstructed by private use, for more than 40 years. This use, the complainants claim, establishes the *locus in quo* as a

public highway by user, and that complainants have a right to have it remain such without interference or obstruction by the owners of the soil.

In order to constitute a dedication by user, or in any other manner, two things must exist:

1. An intention, express or implied, to dedicate; that is, either a grant or relinquishment of the land to the use of the public.

2. It must be accepted by the public authorities having jurisdiction as a public highway.

It is not claimed that there was any express dedication or grant to the public of the land in question.   But it is claimed that the long-continued use by the public as a highway, without objection or protest from the owners, not only implies an intent to dedicate to the use of the public as a highway, but is also evidence of its acceptance as such.

A careful examination of the testimony has led us to a different conclusion.   Here was a legally laid out highway, 100 feet in width, which was ample for any use the public might have through a village of 800 inhabitants, as this village was shown to contain; and this fact must occupy a prominent, if not controlling, influence in the consideration of acts of user by the public, as connected with the question of widening the public highway at this point, and especially as bearing upon the question of acceptance of any additional land for highway purposes.   Had the business houses in the village of Birmingham been erected upon the line of Saginaw street, no question could have been made but that the street would have been wide enough to accommodate the public. Under such circumstances, it appears to us that the mere fact that the public, or that portion thereof who had business dealings with the hotels and tradesmen of the village, have used the land in question to transact such business, cannot be taken as evidence that the public acquired any right to such land by user.

There is no evidence in the case that these strips of land

have ever been used for the purpose of traveling through the village, or that the traveled track of the highway was over such land. Merely passing over the land for any length of time is not alone sufficient to convert it into a public highway. It must have been accepted as such by the public authorities. And where, as in this case, the public already have a highway 100 feet in width for their use, the testimony to prove acceptance must be unequivocal and satisfactory. It would create an additional and unnecessary burden upon the corporate authorities to keep this additional width of street in repair, and subject the corporation to additional liability for neglect. The expense of constructing cross-walks over the additional width would be incurred without any additional, or even corresponding, benefit to the public.

We find no satisfactory testimony of acceptance by the proper public authorities of these strips of land as portions of the public highway. One witness testified to highway work having been done outside of the 100-foot limit of the Saginaw turnpike, but this is disputed. The fact that side-walks were ordered laid by the village authorities in front of the premises by the owners would not be an acceptance. If the walks were laid by the owners upon their own private property, it would neither bind the village to an acceptance, nor affect the right of the owners to claim that the land was their private property. The walks, whether laid upon their own property or in the public streets in front of their premises, would continue to belong to the lot-owners laying them. *Rogers v. Randall*, 29 Mich. 41.

The court of chancery has no jurisdiction to control the discretion of the municipal authorities of the village of Birmingham as to when or where walks shall be laid in the streets of the village. That is a matter of municipal regulation, confided by the law to the board of trustees of the village. The question as to whether they can vacate any portion of a street to the injury of owners of property affected does not arise in this case.

The decree of the circuit court must be affirmed, with costs against the appellants.

The other Justices concurred.