THE COMMISSIONER OF HIGHWAYS OF THE TOWNSHIP OF HOMER v. JOHN H. RIKER.

*Highways—User—License.*

A county-line highway became impassable for travel in front of a land-owner's premises, and he consented to the removal of his line fence, which was two rods from the county line, back onto his land, and to its use for highway purposes until the highway *proper* could be made passable for travel. The highway commissioner agreed to make the required repairs, and then replace the fence in its original position. Pursuant to such consent and agreement the fence was moved, and thereafter the public travel passed over said land; but the repairs

were not made, although the promise to make them was renewed from time to time, until finally, after ten years or more of such travel, the commissioner, for the first time, denied the rights of the land-owner under the agreement, and refused to change the location of his fence, or permit him to replace it in its former position, claiming the establishment of the highway *as traveled* by *user*. Thereupon the land-owner, after the refusal of his application to the commissioner and town board to straighten the road and discontinue that portion encroaching upon his land, replaced his fence in its original position, and, in a suit under the statute for encroaching upon the public highway in so doing, it is held that such use of defendant's land did not operate to establish a highway, but that his consent to such use was a revocable license, upon the revocation of which he had the right to restore his fence to its original position, the township authorities refusing so to do. *Irving v. Ford*, 65 Mich. 241; *Kruger v. LeBlanc*, 70 Id. 76.

Error to Hillsdale. (Lane, J.) Argued January 30, 1890. Decided February 20, 1890.

Statutory action for encroachment of fence upon highway. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*L. B. Tompkins* (*Louis C. Miller*, of counsel), for appellant.

*A. St. John*, for defendant.

Morse, J. This suit was originally commenced in justice's court under the statute, plaintiff claiming that the defendant had encroached upon a highway by the building of a fence. Plaintiff had judgment in the justice's court, but, on appeal to the circuit, a jury found a verdict for the defendant.

The evidence developed the fact that in 1840, and also in 1857, proceedings were taken by the proper authorities to lay out a highway on the county line, running between the township of Homer, in Calhoun ·county, and the township of Litchfield, in Hillsdale county; but such pro-

ceedings in both years were illegal and ineffectual, as far as the highway in dispute is concerned. The claim of the plaintiff at the close of the trial was narrowed down to this:

*First.* That, an attempt having been made to lay out the highway on this line by the commissioners of highways of the townships of Litchfield and Homer, an opening and user of the same for eight years would establish the highway under the statute.

It was admitted by the defendant, and shown by the proofs, that a highway had been opened and used since 1872 upon this county line, except along the defendant's premises, where the fence was built by him. At this point it was claimed by the defendant, and found by the jury, in effect, that the line deflected as the highway was used, and ran over upon his land, and that the fence, which was claimed to be an encroachment, was put just two rods from the county line, giving the requisite space for the road as laid out. The trial court instructed the jury that if they found that this highway, as traveled before defendant's fence was built, was upon the true county line, as established by the original government survey, and that it had been used by the public as and for a public highway for the period of 10 years or more preceding the alleged encroachment, then the plaintiff must recover, at all events. As the jury found for the defendant, it must be considered that they determined from the proofs that the highway was not on the county line, but upon the land of defendant, as claimed by him. Indeed, the proofs were almost conclusive that the fence of defendant alleged to be an encroachment was built on the defendant's land, leaving two rods between such fence and the county line for defendant's portion of the highway, if the same were laid upon the county line as its center.

*Second.* The plaintiff also contended that, if the highway at this point, as used, was not on the county line, but over upon defendant's land, still, as the proof was conclusive and undisputed that it had been opened and used for 10 years or more upon the defendant's land, it had become a highway by user, and the fence was therefore an encroachment.

To meet this claim of plaintiff, defendant offered, and was permitted against objection to introduce, testimony tending to show the following facts as to user: That in the fall of 1872 one Chapman, one of the commissioners of highways of the township of Homer, came to him, and asked the privilege of removing defendant's north fence along the highway as originally laid out, and setting it far enough back in his fields to make a passage for the public upon his hard and cleared land, until the road could be cleared up and worked through on the county line, where the ground was low, wet, and swampy. Mr. Wetherly, another of the commissioners for Homer, was with Chapman, and joined in the request. These commissioners agreed to replace defendant's fence on the true line as soon as they could get the road on the county line in a passable condition. Before this, people had got around this bad place by going through the woods to the north, on uncleared, unfenced lands. Defendant said to them that he would see the commissioners of his own town, and see what they said about it, and meet them again. This he did, and finally concluded to let the Homer commissioners put the fence back at their expense, until the road could be worked on the county line.

In pursuance of this agreement, the fence was moved, and thereafter travel went over this land. But the commissioners of Homer did not seem to do anything towards working the road on the county line, which, under an agreement between the commissioners of the two towns,

it was their duty to do; this part of the road, by division, being assigned to Homer to keep up. He spoke to the commissioners year after year about it, asking them to clear up the road, and move his fence back where it belonged, and as they had agreed to do; and, although they neglected to do so, they kept promising to do as he requested, and all acknowledged his right to have his land, and to have his fence put back on its first and true line, until the present commissioner and plaintiff came into office, which was in 1883. Then the plaintiff not only refused to accede to defendant's request to have the fence removed, but would not permit defendant to place it on the true line; claiming the road had been established where it was by user. This was the first time his right to the land had ever been denied, or that it had been claimed that the highway was legally on his premises. Defendant, wishing to avoid a lawsuit, and at the suggestion of the Homer highway authorities, petitioned the highway commissioners of the two towns to have the road straightened, and discontinued so far as it encroached from the true line upon him. The commissioners met but disagreed. He then appealed to the two town boards. They met, and it was Litchfield against Homer, and his application was denied. Thereafter he again applied to the commissioners, with the same result. He then served a notice upon the Homer commissioner to remove the fence from his premises, and place it upon the true line. This notice having no effect, in July, 1887, he removed the fence himself, and placed it where it is now.

The admission of this testimony, and the charge of the court in relation to it, form the chief ground of error relied upon by plaintiff's counsel. After instructing the jury that, if the lands in question claimed as a highway by the plaintiff had been used notoriously as a public

highway for ten years preceding the alleged encroachment, then it would be a public highway, the court said further:

"But, gentlemen, there are some limitations upon these instructions which I have given you. It is claimed here on the part of the defendant that the user, evidence of which has been given here, was pursuant to certain arrangements which he made with one of the commissioners of the township of Homer—one or two of the commissioners of the township of Homer—that for the convenience of the public that fence should be temporarily set back upon the land of Mr. Riker, until such time as the commissioners would thereafter proceed to have it opened along the true county line. It is also claimed by him that this arrangement was brought to the attention of the subsequent incumbents of the office of highway commissioner of the township of Homer, and that they recognized this arrangement, and said they would have the highway changed, until the incumbent, Mr. Peters, who is plaintiff in the case, came into office, and he refused to have it done.

"Now, gentlemen, if you find that this user or occupation of the land claimed here by the plaintiff to be a public highway was under such an agreement, or under such an arrangement, or such license, if you may call it that, then the use of that land for a public highway would not operate to establish a highway, but it would be a license, which the defendant in this case could revoke at such time as he saw fit thereafter, and he would then have the right at the time that he did, if it was being used under that sort of arrangement, to put up the fence which is the alleged encroachment here. It is claimed, however, under the testimony, that even if there was a license of this kind, the highway commissioners failed to recognize that license, and afterwards, upon complaint of Mr. Riker, and on his application that the highway should be laid over where it belonged upon the county line, they refused to recognize his rights, and afterwards other commissioners failed to recognize such agreement or license as claimed by Riker. If you find this to be so, then the commissioners were from that time occupying his premises without right or authority, and the user would run from the time of such occupation, with denial of his rights."

It is argued by plaintiff's counsel that the circumstances of the occupation of defendant's land, whether with or without his consent, have no bearing upon the statutory user; that the question of dedication is not involved; and that it was held by this Court in *Potter v. Safford,* 50 Mich. 46 (14 N. W. Rep. 694), that the object of the statute was to insure a contest of the validity of the highway within a reasonable time, and that in *Ellsworth v. Grand Rapids,* 27 Mich. 256, this Court said the object of the statute was—

"To bar the right of the owner to dispute the rightfulness of the public user after the prescribed period in all cases where the user for that period had been uninterrupted and undisturbed, whatever the actual intention of the owner might be."

It is further said in that case that the question of dedication is not involved; that—

"The statute, in all such cases, is a fair notice to the owner that, if he means to dispute the rightfulness of the public user, he must assert his right within the prescribed period, in some way calculated to interfere with, disturb, or interrupt such use by the public, or by the institution of a suit for the judicial determination of the right."

But in that case the road was laid out upon the line *as used,* and had been used, for over 20 years. In this. case the road was laid out upon the county line, and, if the claimed highway was found to be on the county line, the court instructed the jury to bring in a verdict for plaintiff, without reference to this claim of agreement by defendant. But, under defendant's theory, the road as. laid at this point was impassable, and the Homer highway authorities, who had charge and control of the road, asked the privilege of using defendant's land for a temporary passage, which privilege he gave them, with the understanding and agreement that such use should only last until the true highway could be put in safe condition for

travel; that year after year they agreed to fix the road, and recognized his right, and he continued to let them use his land, depending upon their promises to give him back eventually, and as soon as practicable, the land so used, which was his own; that as soon as his right was disputed he moved to regain his own, but saw fit to first accomplish it, if possible, by appealing to the highway authorities.   When this failed, he inclosed the land that rightfully belonged to him, leaving the road as laid out intact and open, as far as his lands were concerned.

The question arises whether land can be acquired by user under the statute, under these circumstances.   If the testimony on the part of the defendant be true (and it was practically undisputed), there has never been a dedication of this land to the public by the owner, or an acceptance of it for that purpose by the highway authorities.   The acceptance, if any, was not until 1883, when for the first time defendant's rights were denied by the present commissioner.   This land was, by the license of the defendant, allowed to be used temporarily by the highway authorities and the public, for the purpose of getting around a bad place in the highway as originally laid and intended.   The acceptance of the same by such authorities was for this purpose, and it was used with this intent.   Can the good nature of the defendant, in not revoking his license until his right to do so was denied, be used against him to acquire his land without compensation?   If the doctrine contended for by the plaintiff be correct, that the mere use, without reference to the intent of such use, brings the case within the statutes relating to user, then this State is full of roads which can never be straightened and put upon the intended original line, unless the commissioner in office, or the town board on appeal, so wills it; and the land of one adjoining proprietor, in wet, swampy, or miry places,

will be taken for a road, and the same amount taken added from the road to the land of the opposite proprietor. It seems to me that the case of *Irving v. Ford*, 65 Mich. 241 (32 N. W. Rep. 601), is in point here; that the character and intent of the use must be taken into consideration; and that the question of dedication and acceptance is involved under the circumstances and facts shown by the defendant. See, also, *Kruger v. Le Blanc*, 70 Mich. 76; *Wicks v. Ross*, 37 Id. 466. In this view, the evidence was admissible, and the charge of the court correct.

Other errors are assigned as to the admission of testimony, but none are of sufficient weight to disturb the verdict, under the undisputed facts in the case. One witness was permitted to testify that in the fall of 1872 (this being while Chapman was commissioner) he asked Chapman why the fence was not on the line, and Chapman replied that he had " borrowed a piece of land of Riker, and he moved the fence back." Chapman was dead at the time of the trial. It may be doubted whether this testimony was admissible, but it could not have been controlling in the case, and, if error, was error without prejudice. The defendant proved by two witnesses besides himself the agreement with Chapman and the other commissioner, and established the recognition of his claim by other commissioners, and there was practically no testimony to disprove or dispute it.

The fact was established beyond question that this road was attempted to be laid out on the county line, and the rest of its course as used was on that line. The defendant moved upon his land nearly 25 years ago. His first fence was nearly, if not quite, up to the county line, and his land cleared to the fence up to 1872, when the fence was moved. The travel before that, if any, went around this swampy place to the north. The whole tenor

of the evidence in the case supports defendant's claim as to the facts. The jury were instructed that the burden of proof was upon the defendant to show that the alleged highway was not upon the county line, the route of the original survey, and that the burden was also upon him to show that the highway did not exist as alleged by plaintiff.

The case was fairly submitted to the jury, and we are unable to discover any prejudicial errors. The judgment is affirmed, with costs.

The other Justices concurred.