INDIAN CLUB v. LAKE COUNTY ROAD COMMISSIONERS.

1. HIGHWAYS AND STREETS—ESTABLISHMENT BY USER.
   A highway which has not been established pursuant to existing statute must have a defined line, used and worked upon by the public authorities, traveled over and used by the public for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive (CL 1948, § 221.20).

2. DEDICATION—HIGHWAYS—ACCEPTANCE—MAINTENANCE.
   A dedication of a highway must, in order to be rendered a public highway, be followed by an acceptance by the public authorities, with the way taken and maintained as other highways (CL 1948, § 221.20).

3. HIGHWAYS AND STREETS—ESTABLISHMENT BY USER—EVIDENCE.
   Woodland trail through resort area subdivision which evidence shows had been dedicated but not formally accepted, had been used by the public for approximately 60 years, and had been maintained in a passable condition by public authorities for about 20 years after it had been certified as a part of the county highway system *held*, to have been established as a public road (CL 1948, §§ 221.20, 247.1–247.13; CLS 1956, § 247.652 *et seq.*, as amended).

4. COSTS—PUBLIC QUESTION—HIGHWAYS AND STREETS—WOODLAND TRAIL.
   No costs are allowed in suit to enjoin defendant county road commissioners from claiming and maintaining woodland trail as a public road, a public question being involved (CL 1948, §§ 221.20, 247.1–247.13; CLS 1956, § 247.652 *et seq.*, as amended).

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur, Highways § 9 *et seq.*
[2] 16 Am Jur, Dedication §§ 6, 30–42.
[3] 25 Am Jur, Highways § 9 *et seq.*
   16 Am Jur, Dedication §§ 6, 30–42.
[4] 14 Am Jur, Costs § 91.

Appeal from Lake; Stephens (Rupert B.), J. Submitted December 7, 1962. (Calendar No. 119, Docket No. 49,419.) Decided April 5, 1963.

Bill by the Indian Club, a Michigan corporation, John B. Stephanoff, Gatha Stephanoff, Harry S. Benedict, and Bernice V. Benedict against the Board of County Road Commissioners of Lake County, a body corporate, to enjoin defendant from claiming and maintaining woodland trail as public road. Bill dismissed and decree entered establishing way as public road. Plaintiff appeals. Affirmed.

*Robert S. Tubbs (Seth R. Bidwell,* of counsel), for plaintiffs.

*Charles A. Wickens* and *Nelson M. Willis (Jack Born* and *Paul Greer,* of counsel), for defendant.

Smith, J. Plaintiffs brought this action for the purpose of having a certain "trail" declared to be a private road and further to enjoin the Lake county road commission from asserting jurisdiction over it. The road in question leaves the Baldwin-Irons county highway at a point approximately 600 feet north of the southeast corner of section 30, in Eden township, Lake county, and thence proceeds in a westerly direction to a resort and a platted area known as Little Manistee, where it crosses a railroad right-of-way; then it proceeds in a northerly and westerly direction into section 19, following roughly the course of the Little Manistee river, to property referred to as Stephanoff's. There, it formerly continued near Stephanoff's buildings in a westerly direction to a county highway. By agreement between the Lake county road commission and Stephanoff, in 1942, the road was relocated to a course somewhat farther away from the Stephanoff

buildings and now proceeds in a straight line westerly to the county highway.

The road in question enters the Little Manistee plat and proceeds along Nordheim road, one of a number of streets in the plat which has been dedicated but not formally accepted. There are a number of cottages and summer homes in this area, in addition to plaintiff's property. All of the owners are not included as plaintiffs, except by reference, although the only means of ingress and egress for them is by the road which is here in dispute. Testimony discloses that there was a take-over and certification of the road in 1942, and that the county has been receiving funds[1] since that year. At the pretrial conference, counsel stipulated that the road had been certified and that it presently appears on road maps as a county public road. Both plaintiffs and defendants agree that the only way that this road could become a public highway would be by "user" under the statute. CL 1948, § 221.20 (Stat Ann 1958 Rev § 9.21).[2]

Under the statute, however, to be a mere user for the specified period is not, in itself, sufficient to make the road a public highway. This Court has held the statute requires that "there must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive." *Alton v. Meeuwenberg* (syllabus 4), 108 Mich 629. See,

---

[1] See citation to PA 1931, No 130 in footnote, *post*, 92.—Reporter.

[2] "Sec. 20. All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act."

also, *Missaukee Lakes Land Company* v. *Missaukee County Road Commission,* 333 Mich 372, 379; *Leelanau County Board of Road Commissioners* v. *Bunek,* 344 Mich 605, 612; *Bain* v. *Fry,* 352 Mich 299, 305. There must be, then, use for the statutory period sufficient to constitute a dedication. But, also, there must be an acceptance by the public authorities with the way taken and maintained as other highways. *Chapman* v. *City of Sault Ste. Marie,* 146 Mich 23; *Leelanau County Board of Road Commissioners* v. *Bunek, supra; Dryfoos* v. *Township of Maple Grove,* 363 Mich 252.

Testimony showed that the road in dispute has existed since before 1900, in almost the exact location as it does today. There was a relocation of a small portion of the road in 1942, pursuant to the Stephanoff agreement, as mentioned above. This was entirely paid for by the road commission. There was testimony that the road had been used by the public for many more than 10 consecutive years and that this use was open, notorious, and exclusive. Various witnesses, who have lived in the area up to 50 years, testified that they used the road, and saw many others do the same. One member of plaintiff Indian Club testified that nobody was ever prevented from using the road, and that the members assumed "the people had a right—that we had to provide a right of access to the people in the Little Manistee plat." Another witness testified that his father put a gate across the road to restrain cattle and padlocked it but when a delegation from Little Manistee came down and told his dad that he just couldn't do that and "This is a public road; you can't shut it off," the gate was left unlocked.

Testimony also established that the county road commission and its predecessor worked on the road. The county engineer testified that he surveyed a portion of the road in 1942, for the commission

so that they could relocate a portion. There was testimony that the culverts were installed by order of the public authorities. Employees of the road commission testified that they had performed work on the road at various times over the years. The years in which work was performed by public authorities were listed as follows: 1941, 1943 or 1945, 1947 and 1948, 1949, 1953 and 1954, 1955, 1960.

In *Pulleyblank* v. *Mason County Road Commission*, 350 Mich 223, 227, quoting *Crosby* v. *City of Greenville*, 183 Mich 452, 460 we said:

" 'It is not essential that every part of the highway, in length or width, should be worked and traveled in order to show the intention of the public to accept the entire highway.' "

It was further stated in the *Pulleyblank Case* (p 229):

"The plaintiffs object that the examples of repair and upkeep testified to are sporadic, in effect that the instances given do not come, consecutively, year after year. Such testimony is not necessary. Work on county roads reflects not only the state of the municipal treasury, but is adjusted also to the needs of local traffic and local inhabitants. It is clear that the work done, whatever it was, kept the road in a reasonably passable condition."

The testimony in this case indicated that the road was always passable, except after the winter snows.

Trial Judge Rupert B. Stephens, after watching a motion picture of the road, inspecting it personally in the company of counsel, and listening to the testimony, found for the defendant road commission. In his extensive opinion, he states:

"The testimony preponderates that formerly the road was of considerable importance. During the early 1900's, it was the only road from the south leading to the village of Irons. Little Manistee

was also a regular railroad station where trains stopped daily, discharging and boarding passengers. Resort owners in the northern portion of the county continuously used the road for transporting these passengers to and from their places of business. It was also used by farmers for transporting produce and by lumber men for hauling logs to the railroad station. With the passage of years and the improvement of highways, Little Manistee first became a 'flag stop' and more recently was completely abandoned, the tracks having been removed within the past few years. The road continues to be used extensively, however, not only by members of the Indian Club and cottage owners but by the general public as well. The testimony also preponderates, that throughout the many years of its existence (with 1 exception to be mentioned later), the road was used by the general public without objection, and, by reputation, was considered by all to be a public road.  *  *  *

"The proofs also preponderate that public works and funds were expended on the road both before and since the passage of the so-called McNitt act.[3] There was undisputed testimony by Mr. Everett Wicks that culverts were installed by the township between 1906 and 1910. And, that other work was done at the order of the township supervisor. Since the passage of the act and the assumption of jurisdiction by the defendant, considerably more work was done. Mr. Ray Lum testified that he saw county trucks at work on the road in the early 1930's. There was also testimony of ditching, brushing-out and making fills. In 1942, the defendant caused the north portion of the road  *  *  *  to be surveyed and relocated. Jahon Avery testified that between 1943 and 1954, as an employee of defendant, he fixed 3 low spots in the road, cut brush,

---

[3] PA 1931, No 130 (CL 1948, §§ 247.1–247.13, Stat Ann § 9.141–9.153), which was repealed by PA 1951, No 51. See similar and other provisions, currently in CLS 1956, § 247.652 et seq., as amended (Stat Ann 1958 Rev § 9.1097[2] et seq.).—Reporter.

made fills and installed several 12-inch culverts. There was testimony that during 1947–1948 some 8 yards of gravel was hauled by defendant's employees and a new grade made at the railroad crossing. At this time, the signs at the crossing were taken to Baldwin for repair and were later reinstalled. William Squires testified that as an employee of the defendant commission, he filled mud holes during the years 1953 and 1954. The road was graded by the defendant during June of 1959, and it was regraded during the summer of 1960. * * *

"In the instant case, in considering whether or not the use by the public was open, notorious and hostile, it must be remembered that, during the early 1900's, Little Manistee was a public railway station. The testimony reveals that for many years (until the general improvements in the highway system) plaintiffs and their predecessors in title, as well as others of the general public, regularly and consistently used the railroad and the station not only as a means of transportation to Little Manistee, but also to other resorts and business places in the area. Such passengers were called for and returned to the station by the residents of that part of the county and the road in question was, of course, used for such purpose. The road is not a mere abandoned logging road, although the evidence discloses that logs were hauled over it to the station for shipment. Despite this extensive traffic, no objection was ever made by the plaintiffs, or their predecessors in title, to this use."

The evidence shows that a public road has been established by user in accord with the statute as construed by this Court. For this reason the decision of the trial court is affirmed.

No costs, a public question being involved.

Carr, C. J., and Dethmers, Kelly, Black, Kavanagh, and Souris, JJ., concurred.

O'Hara, J., took no part in the decision of this case.