DONALDSON v ALCONA COUNTY BOARD OF COUNTY ROAD
COMMISSIONERS

Docket No. 182032. Submitted June 11, 1996, at Detroit. Decided November 8, 1996, at 9:00 A.M.

Orville and Glenda Donaldson and Walter Kosalski brought an action in the Alcona Circuit Court against the Alcona County Board of County Road Commissioners and Jessie and Lorene Tucker, seeking to have a dead-end road, which serves the houses owned by the plaintiffs and the Tuckers and is not shown on any of their deeds but simply exists upon their private property without benefit of easement, platting, or other legal status, declared a public highway under MCL 221.20; MSA 9.21 and to force the Alcona County Road Commission to maintain the road. The road commission had maintained the road for a number of decades in a limited fashion, snowplowing in the winter and occasionally grading to keep the road in reasonably passable condition, under the mistaken impression that the road was a part of the county road system, but had discontinued maintenance upon discovering that the road had never been accepted into the system by the road commission. The court, John F. Kowalski, J., granted summary disposition to the defendants, reasoning both that the plaintiffs did not have standing to bring the suit and that, under the undisputed facts, the plaintiffs could not satisfy the "hostility" or "exclusive" use requirement in order to have the road found to be a public highway. The plaintiffs appealed.

The Court of Appeals *held:*

The trial court erred in determining that the plaintiffs lacked standing to bring this action. Nevertheless, the court correctly determined the merits of the plaintiffs' action.

1. The plaintiffs' interests are unique, not shared by the general public, and, in fact, are contrary to the interests of the general public. Because the plaintiffs have a sufficient personal stake in the outcome of this litigation that differs from that of the general public, they have standing to bring this action.

2. The mere permissive use of a roadway by the general public however long continued is insufficient to make the roadway a public highway under the "highway user" statute, MCL 221.20; MSA

9.21. In order to make the roadway a public highway, the use must be so open, notorious, and hostile or exclusive as to be notice to the landowner that the landowner's title is denied. The trial court properly found that the hostile or exclusive requirement was not satisfied in this case. The plaintiffs' right to use the road was not denied or diminished as a result of the road commission's maintenance activities. Instead, that activity enhanced the plaintiffs' right to use it for their own purposes. The plaintiffs received a benefit and cannot argue that these favorable actions were in derogation of their private rights. The trial court properly granted summary disposition to the defendants.

Affirmed.

GRIFFIN, P.J., dissenting, stated that the evidence presented a genuine issue of material fact whether the road became a public highway under MCL 221.20; MSA 9.21, and that the case should be reversed and remanded for further proceedings. Where evidence of express dedication is lacking, the public may still acquire a road "by user," a doctrine through which dedication is implied through prescription. Dedication may be implied through the landowner's passive failure to object to the public's control of a road. The evidence created a genuine issue of fact whether the public used and possessed the road openly, notoriously, and exclusively. Continuous public maintenance of a road could lead a reasonable landowner to believe that the public was asserting control, and assertions of public control are inconsistent with private ownership. Where public control is inconsistent with private ownership, the extent to which the landowner permitted or welcomed the intervention is irrelevant. Highway by user requires that public use be inconsistent with the landowner's property rights, not that public use be harmful or unwanted. Regular public expenditures of time and money to repair a road can signify implicit acceptance of the road as a public highway. The matter should be remanded for a determination whether the road commission's intervention and control of the road was significant enough to constitute acceptance.

1. STANDING — COURTS.

A plaintiff, to have standing to bring an action, must demonstrate a legally protected interest that is in jeopardy of being adversely affected and allege a sufficient personal stake in the outcome of the dispute to ensure that the controversy sought to be adjudicated will be presented in an adversarial setting that is capable of judicial resolution.

2. Highways — Highway by User.

 The mere permissive use of a roadway by the general public however
   long continued is insufficient to make the roadway a public high-
   way under the "highway by user" statute; in order to make the
   roadway a public highway, the use must be so open, notorious, and
   hostile or exclusive as to be notice to the landowner that the land-
   owner's title is denied; the public use must be hostile to the private
   rights of the landowner, meaning that those rights are being dimin-
   ished or denied (MCL 221.20; MSA 9.21).

*Anderson & Anderson and Associates, P.C.* (by *Acie G. Anderson, III,* and *Rae Anne Anderson*), for the plaintiffs.

*Gillard, Bauer, Mazrum, Florip, Smigelski & Gulden* (by *James L. Mazrum*), for the Alcona County Board of County Road Commissioners.

Before: Griffin, P.J., and Bandstra and M. Warshawsky,* JJ.

Bandstra, J. Plaintiffs appeal as of right the Alcona Circuit Court order granting summary disposition to the Alcona County Board of County Road Commissioners (the road commission) and other defendants. We affirm.

Plaintiffs, Orville and Glenda Donaldson and Walter Kosalski, own two parcels of property north of a road that extends eastward off O'Donnell Road in Alcona County. The road is sand-based and unditched; it is approximately one-quarter mile in length. Defendants Jessie and Lorene Tucker also own property north of the road. The Donaldsons, Walter Kosalski, and the Tuckers each reside in homes on their respective properties. The only other property owner along the road is the United States Forest Service, which is not

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

a party and which apparently has no interest in the resolution of this dispute. The road is a dead-end road and serves only the three houses owned by the parties.

The road is not shown on any deeds but simply exists upon the private property of the parties without benefit of easement, platting, or other legal status. It was apparently placed there by a predecessor in title before the parties purchased their property, without any involvement by the road commission.

For a number of decades, the road commission has maintained the road in a limited fashion, snowplowing in the winter and occasionally grading to keep the road in a reasonably passable condition. The road was maintained in this fashion because the road commission management was under the mistaken impression that the road was part of the county road system. However, in the early 1990s, a review of the records of the road commission indicated that the road had never been accepted into the system by the road commission. Further, upon inspection, the road was determined not to meet the standards for acceptance because of inadequate right of way, inadequate drainage, inadequate subbase, and inadequate gravel surface. For these reasons and also to eliminate the cost of maintaining this and a number of similar roads in Alcona County, a decision was made that the road commission would no longer service the road, and plaintiffs were so informed. Plaintiffs filed this lawsuit to have the road declared a public highway under MCL 221.20; MSA 9.21 and to force the road commission to continue maintaining it. In contrast, the Tuckers joined as defendants and, in their answer to the complaint, took the position that "[y]ou can

make it a public road if you move it off [our] property."

Following discovery and the submission of affidavits, plaintiffs moved for summary disposition. Pursuant to MCR 2.116(I)(2), the trial court granted summary disposition to defendants, reasoning both that plaintiffs did not have standing to bring this suit and that defendants were entitled to summary disposition under MCR 2.116(C)(10), there being no genuine issue regarding a material fact. Although we conclude that the trial court erred with respect to the standing question, we affirm its decision regarding the merits of plaintiffs' action.

Standing is a legal term denoting the existence of a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy. *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 633, 643, 651; 537 NW2d 436 (1995). To have standing, a plaintiff must demonstrate a legally protected interest that is in jeopardy of being adversely affected and allege a sufficient personal stake in the outcome of the dispute to ensure that the controversy sought to be adjudicated will be presented in an adversarial setting that is capable of judicial resolution. *Wortelboer v Benzie Co*, 212 Mich App 208, 214; 537 NW2d 603 (1995); *Trout Unlimited, Muskegon-White River Chapter v White Cloud*, 195 Mich App 343, 348; 489 NW2d 188 (1992).

In the present case, the trial court determined that plaintiffs did not have a sufficient personal stake in this matter, relying on *Comstock v Wheelock*, 63 Mich App 195; 234 NW2d 448 (1975), a precedent the court found to be factually similar to the present matter. In *Comstock*, the defendants owned property that the

general public had used for access to Long Lake for over seventy years. *Id.* at 196. They erected a boathouse on the property and signs forbidding the public from entering. *Id.* The plaintiffs, who were private citizens, filed suit attempting to have the defendants' property declared a public highway so that the public could continue to have access to the lake. *Id.* at 196-197. This Court found that the plaintiffs did not have standing because public-rights actions must be brought by public officials vested with such responsibility. *Id.* at 202. Further, the Court noted that the plaintiffs had no greater rights than the general public and, hence, had no standing to assert those rights. *Id.* at 203. Defendants rely upon *Karrip v Cannon Twp*, 115 Mich App 726; 321 NW2d 690 (1982), a case with facts similar to *Comstock*, but with a different result with regard to the standing issue.

We find it unnecessary to determine whether *Comstock* is still controlling authority after *Karrip*. See, generally, 2 Cameron, Michigan Real Property Law (2d ed), § 25.8, p 1161. Both *Comstock* and *Karrip* involved members of the general public who sought to continue using property as a public highway, a situation different from that at issue here. Plaintiffs in this case are not members of the general public but, instead, own property along the contested road. They need the road to get to their homes and, if it is not maintained by the road commission, they will have to undertake that burden. These interests are unique to plaintiffs and not shared by members of the general public. In fact, plaintiffs' interests are contrary to the interests of the general public. If the road is maintained by the road commission, then it is the general public that must pay the maintenance expense. The

road offers little benefit to other members of the public because it is a dead-end road that leads to only three houses. Because plaintiffs have a sufficient personal stake in the outcome of this litigation that differs from that of the general public, plaintiffs have standing to bring this action. *Karrip, supra* at 733-734; *Comstock, supra* at 202-203. The trial court erred in granting summary disposition to defendants with regard to the standing question.

With respect to the merits, plaintiffs' complaint was based on the "highway by user" statute, MCL 221.20; MSA 9.21, which provides in pertinent part:

> All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for ten years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used eight years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act.

Under this statute, it is insufficient if public use of a roadway is "a mere permissive use by the general public however long continued. In order to make it a public highway[,] the use must be so open, notorious and hostile as to be notice to the landowner that his title is denied." *Bain v Fry*, 352 Mich 299, 305; 89 NW2d 485 (1958); accord *Missaukee Lakes Land Co v Missaukee Co Rd Comm*, 333 Mich 372, 379; 53 NW2d 297 (1952); *Murphey v Lee Twp*, 239 Mich 551, 560-561; 214 NW 957 (1927). Other precedents substitute the requirement that a use must be "exclusive" instead of "hostile." *Boone v Antrim Co Bd of Rd Comm'rs*, 177 Mich App 688, 693; 442 NW2d 725

(1989); accord *Dryfoos v Maple Grove Twp*, 363 Mich 252, 255; 109 NW2d 811 (1961); *DeWitt v Roscommon Co Rd Comm*, 45 Mich App 579, 582; 207 NW2d 209 (1973). We conclude that these two terms are of similar import.[1] The trial court determined that, considering the undisputed facts in this case, this "hostility" or "exclusive" requirement could not be satisfied and that defendants were entitled to summary disposition under MCR 2.116(C)(10). We agree.

An action is "exclusive" if it "excludes" something, meaning that it "shut[s] out," "bar[s]," or "disregard[s]" something. *The American Heritage Dictionary* (2d College Ed, 1982). Similarly, an action is "hostile" if it treats something in an "antagonistic" manner. *Id.* In the present context, what might be excluded or treated with hostility is some property right of a landowner, to the extent that it is negated or diminished by a public authority's action. The case law applying the highway by user statute and comparable principles of adverse possession is replete with instances where actions by a public authority, the general public, or an adjoining landowner have been considered "exclusive" or "hostile" in a context where purported private property rights have been diminished or denied as a result. See, e.g., *Indian Club v Lake Co Rd Comm'rs*, 370 Mich 87, 90; 120 NW2d 823 (1963)

---

[1] Plaintiffs argue that, in "modern day cases," the previous "hostility" requirement has been weakened by language suggesting that the use as a public highway must be merely "exclusive." However, this is no modern-day development; an early precedent construing the statute required that the possession by the public must be open, notorious, and "exclusive." *Alton v Meeuwenberg*, 108 Mich 629, 636; 66 NW 571 (1896). It appears that, over the years, the "hostility" and "exclusive" language has been used interchangeably, suggesting that the two terms require the same thing. The public use must be "hostile" to the private rights of landowners, meaning that those rights are being "excluded" or denied.

(one owner of a purportedly private road unlocked a gate in the face of complaints from members of the public who wanted to continue using the road); *Gorte v Dep't of Transportation*, 202 Mich App 161, 164; 507 NW2d 797 (1993) (adverse possessors maintained disputed land, ejected trespassers, and rejected the defendant's notice that the parcel was state-owned); *DeGroot v Barber*, 198 Mich App 48, 53; 497 NW2d 530 (1993) (adverse possessors posted no trespassing signs and actively denied the defendants use of the disputed parcel).

With a different set of facts surrounding roadway maintenance activities, those activities could constitute actions that would be "hostile" against or "exclusive" of private property rights. For example, the road commission might have purchased a parcel of property from the United States Forest Service for use as a public park and maintained the road as a means of public access to that park. In so doing, the road commission's actions would clearly have encouraged and facilitated public use of the roadway to the diminishment of adjoining landowners' rights to restrict public use of the roadway and peacefully enjoy it as a private road.

In the present case, plaintiffs can point to no comparable denial or diminishment of their right to use the roadway as a result of the road commission's maintenance activities. Quite to the contrary, the road commission's activity in grading and plowing the road enhanced plaintiffs' rights to use it for their own purposes, i.e., to secure access to their residences. During the years that the road commission graded and plowed the contested road, plaintiffs received a benefit. Because the road commission maintained the

roadway, plaintiffs avoided the cost of maintaining it themselves. The road commission was, in effect, doing plaintiffs a favor, and they cannot now argue that these favorable actions were in derogation of their private rights.[2] No reasonable mind could conclude that the "exclusive/hostile" requirement was satisfied under the uncontested facts in this case; summary disposition was properly granted to defendants.[3]

We affirm.

M. WARSHAWSKY, J., concurred.

---

[2] We do not focus on the "benevolent intent" of the road commission as suggested by the dissent; rather, our focus is on the benevolent effect that the road commission's activity had on plaintiffs' property rights. Because the effect was benevolent, the "exclusive" or "hostile" requirement was not satisfied.

[3] We thus conclude that, under the facts of this case, the hostility requirement for application of the highway by user statute was not satisfied. However, we also question whether the statute could ever be appropriately applied, in effect, to force a public authority to accept a road as a public highway. We found no precedents in which the statute was so applied. As the trial court and the parties in the present case acknowledged, the statute is generally used by public authorities to designate roadways as public highways, over the objections of adjoining property owners who would rather have the roadways remain private roads. The statutory context of the highway by user statute suggests that it should not be used to foist public highway responsibilities upon road commissions without their consent. A township may begin proceedings to declare a road a public highway only "with the prior written consent of the board of county road commissioners," MCL 221.20a; MSA 9.21(1), and roads determined to be public highways must be improved by the township to standards established by the county road commission, MCL 221.20g; MSA 9.21(7). Further, our Supreme Court has long recognized that it is "necessary to prevent the public from becoming responsible for land that it did not want or need" and that "it is . . . fundamental that private property cannot be forced on a public authority without its consent." *Kraus v Dep't of Commerce*, 451 Mich 420, 424, 429; 547 NW2d 870 (1996).

GRIFFIN, P.J. (*dissenting*). I respectfully dissent. I agree with the majority that plaintiffs possess standing and that the circuit court erred in ruling otherwise. However, I would hold that evidence that defendant road commission continuously plowed and periodically graded the road for approximately forty years presents a genuine issue of material fact whether the road became a public highway under Michigan's highway by user statute, MCL 221.20; MSA 9.21. I would reverse and remand for further proceedings.

I

The circuit court erred in ruling that plaintiffs lack standing to pursue this matter. I would adopt and follow the principles of standing as set forth in *Karrip v Cannon Twp*, 115 Mich App 726; 321 NW2d 690 (1982). To the extent that *Comstock v Wheelock*, 63 Mich App 195; 234 NW2d 448 (1975), is inconsistent with *Karrip*, I would overrule *Comstock*.

II

Viewing the facts in a light most favorable to plaintiffs, the present matter appears to be a classic case of prescription. Under a mistaken claim of right, defendant road commission used and maintained the road for forty years as if it were a public road.

The circuit court erroneously ruled as a matter of law that the highway by user statute is inapplicable when landowners permit public authorities to maintain a road. Private roads may be appropriated for public use through either "common law dedication" or "highway by user." *Missaukee Lakes Land Co v Missaukee Co Rd Comm*, 333 Mich 372, 379; 53 NW2d

297 (1952); *Pearl v Torch Lake Twp*, 71 Mich App 298, 305; 248 NW2d 242 (1976). Where evidence of express dedication is lacking, the public may still acquire a road "by user": a doctrine through which dedication is implied through prescription. *Murphey v Lee Twp*, 239 Mich 551, 561; 214 NW 957 (1927); *Irving v Ford*, 65 Mich 241, 249; 32 NW 601 (1887); *Rigoni v Michigan Power Co*, 131 Mich App 336, 343; 345 NW2d 918 (1984).

Under Michigan's highway by user statute, MCL 221.20; MSA 9.21, public use of a road, in itself, is insufficient to change a private road into a public highway. See *Indian Club v Lake Co Rd Comm'rs*, 370 Mich 87, 89; 120 NW2d 823 (1963); *Irving, supra* at 250; *Village of Bellaire v Pankop*, 37 Mich App 50, 55; 194 NW2d 379 (1971). Rather,

> [t]o constitute a highway by user, there must be a defined line, and it [the road] must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive. [*Bain v Fry*, 352 Mich 299, 305; 89 NW2d 485 (1958). Citations omitted.]

Express dedication need not be proved, because dedication may be implied through the landowner's passive failure to object to the public's control of a road. See *Chapman v Sault Ste Marie*, 146 Mich 23, 28-29; 109 NW 53 (1906); *Irving, supra* at 249; see also *DeWitt v Roscommon Co Rd Comm*, 45 Mich App 579, 582; 207 NW2d 209 (1973). Accord *Alton v Meeuwenberg*, 108 Mich 629; 66 NW 571 (1896); *Boone v Antrim Co Bd of Rd Comm'rs*, 177 Mich App 688, 694; 442 NW2d 725 (1989); *Rigoni, supra* at 345. Additionally, the public authorities must accept the

road. *Indian Club, supra* at 91; accord *Dryfoos v Maple Grove Twp*, 363 Mich 252, 255; 109 NW2d 811 (1961); *Leelanau Co Bd of Road Comm'rs v Bunek*, 344 Mich 605, 612-613; 75 NW2d 51 (1956); *Boone, supra* at 694.

A

In order to qualify as being "open, notorious, and exclusive," the public use must be of a sufficient magnitude to place "the owner on notice that his title was being denied." *Maghielse v Crawford Co Rd Comm*, 47 Mich App 96, 98; 209 NW2d 330 (1973); accord *Missaukee Lakes Land Co, supra* at 379; *Murphey, supra* at 560-561; *Stickley v Sodus Twp*, 131 Mich 510, 515; 91 NW 745 (1902). In other words, highway by user can be established only if the public use

> puts the landowner on notice that it is adverse to his title, and that he must interdict it somehow to protect his rights. *Eager v State Highway Comm'r* [376 Mich 148, 154-155; 136 NW2d 16 (1965)]. The use must somehow constitute an intrusion upon his property right inconsistent with his possession, *i.e.*, it must be a trespass. [*Rigoni, supra* at 347.]

See also *Alton, supra* at 636.

In the present case, plaintiffs and predecessor landowners submitted testimony by affidavits that the road commission maintained the road by "plowing snow in the winter and grading in the spring, summer and fall sufficient to keep the road in a reasonably passable condition." Each affiant opined that the road commission's maintenance operations were "so open, notorious, and hostile as to be notice . . . that our title was denied." Plaintiffs' factual assertions were corroborated by affidavits of former road commission

employees who attested to plowing, grading, and maintaining the road.

In my view, the documentary evidence submitted by plaintiffs creates a genuine issue of material fact whether the public used and possessed the road openly, notoriously, and exclusively. It would indeed be unusual, if not highly improbable, for public officials to benevolently spend public money maintaining private roads for which the public claimed no interest. Thus, depending on the extent and nature of the public presence, the continuous public maintenance of the road could lead a reasonable landowner to believe that the public was asserting control. Cf. *Rigoni, supra* at 346. Because assertions of public control are inconsistent with private ownership, a landowner observing open, control-oriented public intrusions on a private road must take affirmative measures to protect his rights or face the risk of losing the road pursuant to MCL 221.20; MSA 9.21. See *Eager, supra* at 154-155; *Ellsworth v Grand Rapids*, 27 Mich 250 (1873).

Where public control is inconsistent with private ownership, the extent to which the landowner permitted or welcomed the intervention is irrelevant. Highway by user requires that public use be inconsistent with the landowner's property rights, not that public use be harmful or unwanted. The fact that Michigan case law has consistently held that landowner-permitted public use, in itself, is insufficient to establish highway by user, see *Bain, supra* at 305; *Chapman, supra* at 29; *Irving, supra* at 250, does not compel a conclusion that permissive use is fatal to such an action. Indeed, the requirement that public use be open, notorious, and exclusive is to ensure that the

landowner had notice of the public use. The majority's focus on the road commission's permissive use and benevolent intent ignores the fact that under the highway by user statute, dedication may be implied. Cf. *Murphey, supra* at 561; *Chapman, supra* at 28-29; *Irving, supra* at 249.

B

Similarly, acceptance may be accomplished formally or informally. *Olsen v Village of Grand Beach*, 282 Mich 364, 372; 276 NW 481 (1937); *Village of Lakewood Club v Rozek*, 51 Mich App 602, 603; 215 NW2d 780 (1974).[1] Though mere permissive use, however long, is insufficient to show acceptance, *Bain, supra* at 305, informal acceptance can be established "through user or expenditures of public money for the repair, improvement and control of the highway." *Hooker v Grosse Pointe*, 328 Mich 621, 630; 44 NW2d 134 (1950); accord *Rice v Clare Co Rd Comm*, 346 Mich 658, 665; 78 NW2d 651 (1956); *Baker v Roscommon Co Rd Comm*, 329 Mich 671, 681; 46 NW2d 579 (1951); *Olsen, supra* at 370; *Lakewood Club, supra* at 603; see, generally, *Kraus v Gerrish Twp*, 205 Mich App 25, 40; 517 NW2d 756 (1994). While "infrequent and minor maintenance" by the county will not make a highway public, see *Keller v Locke*, 62 Mich App 591, 592-593; 233 NW2d 666 (1975); *Maghielse, supra* at 98-99, "[t]he acceptance need only be such as to keep the road in a reasonably passable condition." *Boone, supra* at 694, citing *Indian Club, supra* at 91;

---

[1] I recognize that the cited cases discuss acceptance in the context of common-law dedication. However, because highway by user is an alternative means to show the dedication element of common-law dedication and each doctrine requires public acceptance, I see no reason to distinguish between the two doctrines regarding the standard for implied acceptance.

see also *Crosby v Greenville*, 183 Mich 452, 461; 150 NW 246 (1914).

Here, plaintiffs aver that, for over forty years, the road commission regularly dispatched road crews to the road for the purpose of maintaining the roadway in a reasonably passable condition. Although the significance, duration, and expense of the maintenance is in dispute, regular public expenditures of time and money to repair the road can signify implicit acceptance. See *Indian Club, supra* at 92-93; *Schurtz v Wescott*, 286 Mich 691, 696-697; 282 NW 870 (1938); *St Ignace v McFarlane*, 45 Mich App 81, 85; 206 NW2d 226 (1973). Thus, I would remand for a factual finding whether the road commission's intervention and control of the road was significant enough to constitute acceptance, e.g., whether the road commission regularly maintained the road so as to keep it in a passable condition, see, e.g., *Olsen, supra* at 372-373; *Crosby, supra* at 461; *Baker, supra* at 679-681; *Hooker, supra* at 628-631; *Boone, supra* at 694, or whether the public intervention was too infrequent or inconsequential to signify an assertion of public control. See, e.g., *Snow v Murphy*, 248 Mich 659; 227 NW 544 (1929); *Reno v Johnson*, 224 Mich 14; 194 NW 529 (1923); *Maghielse, supra.*

If plaintiffs can establish implicit public acceptance of the road, then there is no issue of undesired land being thrust on the public. Compare *Kraus v Dep't of Commerce*, 451 Mich 420; 547 NW2d 870 (1996), citing *Wayne Co v Miller*, 31 Mich 447, 449 (1875). Indeed, if the public has accepted a road, the property is in the

public domain already.[2] See, generally, *Rice, supra* at 665.

For these reasons, I respectfully dissent. I would reverse and remand for further proceedings.

.

---

[2] I do not address the potential issue whether the county can unwittingly accept a road through unauthorized actions of road commission employees because the facts necessary to resolve the issue remain undetermined.