## ALTON *v.* MEEUWENBERG.

108    629
s66NW  571
131    ⁴517
108    629
134    ²635
108    629'
146  ³ 29'

1. PLEADING—NOTICE OF SPECIAL DEFENSE—AMENDMENT.

   In an action for trespass to land certified to the circuit court for trial, the defendant gave notice under his plea of the general issue that the land where the alleged trespass was committed was a public highway, legally laid out, established, and used as such, and that the acts complained of were done by him as commissioner of highways. The circuit judge permitted the defendant to amend the notice by substituting for the words, "and used as such," the words, "and a public highway by dedication and user." *Held,* that the amendment did not make a new issue, or affect substantial rights, and its allowance was not error.

2. INSTRUCTIONS TO JURY — REQUESTS TO CHARGE — DUTY OF COURT.

   The trial judge is not bound to follow the exact language of counsel presenting requests to charge, if he properly states the law as applicable to the evidence introduced, and the several theories of the case presented by counsel.

3. HIGHWAYS—DEDICATION—WHAT CONSTITUTES.

   To constitute a common-law dedication of land for a highway, the owner of the land must set apart for such purpose so much of the land as he intends to be appropriated therefor, and must give it over to the public with the intention that it be used as such, and there must be an acceptance thereof by the public.

4. HIGHWAYS—RIGHT BY USER—HOW ACQUIRED.

   To constitute a highway by user, there must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive.

Error to Newaygo; Palmer, J.    Submitted January 15, 1896.    Decided March 24, 1896.

Trespass *quare clausum fregit* by Dallas D. Alton and another against John Meeuwenberg.    From a judgment for defendant, plaintiffs bring error.    Affirmed.

*L. A. Miller*, for appellants.

*A. F. Tibbitts* and *Martin Rozema*, for appellee.

MOORE, J.    Plaintiffs sued defendant in justice's court for an alleged trespass committed by him upon land of which they claimed to be in the exclusive possession. The acts which were claimed to be trespasses were the setting of stakes and the digging of ditches. The defendant pleaded the general issue, and gave notice that the land where the alleged trespass was committed "is, and at the time the said injuries were supposed to have been committed was, a public highway, * * * legally laid out, established, and used as such;" that the defendant was commissioner of highways; and that what was done, was done as such commissioner. The defendant also gave a bond, and paid such fees as the law requires, and the justice certified the case to the circuit court for trial. The case was afterwards tried before a jury, who rendered a verdict in favor of the defendant.

No record title was introduced on the part of the plaintiffs. They claimed to be in the actual possession of the premises in question. Their testimony was to the effect that they built a one-story cottage on the premises in 1893, and shortly afterwards inclosed the premises with a fence, a part of which was cut away soon after, and that the present fence was built in the spring of 1894. They claimed to have built a dock along the lake front, to have graded the grounds, and to have made other improvements; that the trespass complained of consisted of the digging of two parallel ditches, about 2 rods apart, through some boggy, wet land. These ditches were 12 to 26 inches deep, 3 feet wide, and about 10 rods long. It was claimed, on the part of the defendant, that in 1878 one Smallegan was the owner of the land upon which these ditches were dug; that in that year he gave to the public, for the purpose of a highway, a strip of land that would embrace the land in question in this suit; that he built a brush fence along

the whole line of said strip, throwing it open to the public, the south end opening into the section line road, and the north end opening into a piece of new road which the owner of the land on the north (one Jones) had in like manner opened to the public. It was further claimed that, while Smallegan cleared up the rest of the land, he and the subsequent owner never made any improvements on this strip, except for highway purposes, and never claimed any title to it after 1878. At about this time some attempt was made by the authorities to lay out a highway on this line. It was claimed that in 1878 one Waters made a survey of said strip, and placed his notes of that survey on record with the town clerk, and that it was made by the consent and with the assistance of Smallegan and Jones, and others of the adjoining neighbors. It was also claimed by the defendant that, every year since 1878, highway labor had been performed on that strip under the direction of the commissioners and overseers of highways. At about the middle of this strip, about halfway between its ends, is a marshy spot. The defendant also claims that the piece of land opened by Jones, as far south as the eighth line, was a well-traveled road, and that the strip given by Smallegan, as far south as the marshy spot, had been used for travel by the public for several years. It was not claimed by the defendant that the strip of land that was marshy, or that the land south of it to the section line, was generally traveled; but it was claimed that highway labor was expended upon its entire length, and upon every part of it. These various claims of the defendant were disputed by the plaintiffs. In September, 1893, the plaintiffs fenced in the north end of the Smallegan strip; their north fence being on the eighth line, and their east fence on the line of fence placed there by Smallegan in 1878. The east fence runs through to the lake, and takes in about one-half of the marshy spot; the piece of land fenced in by them being about 60 rods long. Smallegan and Banega

protested against the building of this fence, and tore away at least a part of it. In July, 1893, the defendant was petitioned by seven freeholders to ascertain, describe, and enter of record the center line of this road. He caused a survey to be made, and placed the proceeding upon record with the township clerk. By some error in marking the course of the angles of that survey, one of them was marked "south" instead of "north" in the field notes, which would make it appear that the road turned off into the lake. The plat attached to the field notes shows this was an error. This was also shown by the surveyor, and it was also shown by him that the line, as actually surveyed in 1893, followed substantially the line run in 1878. It was claimed by the defendant that the plaintiffs occupied their cottage only during the heated season of 1893, and again in 1894, staying there at night and over Sunday, and that they permitted others to occupy it during the season of 1894; that their permanent residence was in Fremont. On August 11, 1894, the defendant went upon the land inclosed by plaintiffs, and, as highway commissioner, let a job of ditching on this marshy spot at the extreme south end of plaintiffs' inclosure, and about 40 rods south of the cottage. Mr. Miller, claiming to represent the plaintiffs, ordered the defendant off the premises. The plaintiffs claimed that the Smallegan strip of land was never dedicated to the public, but that it was fenced in by Smallegan, and used by him as a pasture. Proof was introduced bearing upon the several claims of the parties.

The first 8, and the 10th, 11th, 12th, 14th, 15th, 16th, 17th, and 18th assignments of error relate to the rulings of the trial judge upon the admission of testimony. We think none of them are well taken.

The 9th and 13th assignments of error relate to the ruling of the judge in allowing an amendment to the notice attached to the plea, by substituting for the words, "and used as such," the words, "and a public highway

by dedication and user." This was objected to by counsel for plaintiffs, he claiming that it made a new issue, and a different issue from the case certified by the justice, and he cites 2 How. Stat. § 6896. In *McFarlane* v. *Ray*, 14 Mich. 471, which was a case in trespass, brought originally in justice's court, though the proposed amendment to the declaration in that case was denied, it was stated: " We have no doubt of the power of the circuit court to allow amendments that do not affect substantial rights." This is the only decision we can find in our own courts where this feature of the statute has been construed. The purpose of the notice attached to the plea in this case was to apprise the plaintiffs that the defendant claimed the disputed land was a public highway, and that what he did was done as a commissioner of highways. The notice, before it was amended, fully accomplished that purpose. It was not necessary to amend it to allow the testimony to be received which was offered in support of defendant's theory. The amendment did not make a new issue, or affect substantial rights, and its allowance was not error.

The only other questions open for discussion relate to the refusal of the circuit judge to give plaintiffs' several requests to charge, and to the charge as given by him. We have repeatedly held that the trial judge is not bound to follow the exact language of the counsel who presents the requests, if he properly states the law as applicable to the evidence introduced, and the several theories of the case presented by counsel. That portion of the charge, not relating to the questions already disposed of in this opinion, so far as it is necessary to give it in this discussion, reads as follows:

"The title to these premises was put in issue by this defendant under his plea. He claims that he is entitled to the possession of the premises because the premises were a public highway, and that involves to some extent the title. There is a statutory mode of creating a highway, called a 'dedication,' 'statutory dedication.'

But that mode was not followed in this case. That is an admitted fact upon all sides. But they say it became a highway by user, or by dedication not under the statute, but by common law. Now, a dedication of land is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by or in behalf of the public. Now, you will see where the title comes in. To constitute a public highway by dedication, the owner of the fee of the premises must dedicate the land. Now, it is an admitted fact, in this case, that, at the time they claim the land was dedicated and set apart to public use, Mr. Smallegan was the owner of the premises in question. Mr. Smallegan has testified that, so far as he was concerned, he told the public authorities they might pass over a certain portion of the premises, and, at or about that time, he designated that portion of the premises that he donated, or attempted to, by building a fence, a brush and log fence, or something of that character, running parallel, nearly, with the red line indicated upon the map, and the whole length of the line. That, of itself, is not sufficient to constitute a dedication. There are always two parties to a contract, and it was necessary for the public authorities, after that, to accept this dedication, this easement, this right of way over the land. And there was no dedication without first the party owning the land dedicated it, and intended to give it over to the use of the public, and an acceptance on the part of the public of that piece of land. That act, as between the owner of the land and the public, would constitute a public highway. Now, there is another material ingredient. The owner of the land must, at the time he dedicates or seeks to set apart for public use for the purpose of a highway,—must have intended, at that time, to appropriate so much of the land as he set apart for purposes of that kind. He must have intended to do so, and the public authorities at that time must have intended to accept so much of that land for purposes of this kind, for purposes of a highway; and the intent of the parties is determined by their acts and by their declarations. Now, one of the acts of the parties, as bearing upon the question of intent, is the use made of the lands. How did this man Smallegan act, at the time and afterwards? What use did he make of the lands, as showing an intent upon his part of dedicating the land? How was the land treated by the public authorities, with reference to its

being a highway? Did they open a highway all along the line? Or what portion of it did they open? Such portions of it as are actually worked by the public authorities would evidence an intent upon their part to accept it for the purposes dedicated by the owner of the land, and only such portions as are actually worked would operate as a dedication. The other would be an offer to dedicate. Where land is dedicated for public uses by the owner, and accepted by the authorities—And I will say right here there was no formal acceptance, as the proof shows, by the authorities, of this particular land; and whether they accepted the land or not, or this highway or easement or not, must necessarily be shown by what they did. If they worked upon. the entire line of the highway; if they put statutory labor upon it; if the land was in such condition as to make it capable of being used for a highway; if, by any act, they evidenced an intent upon the part of the public authorities to make that a highway,—the entire line,—and the owner of the land at the time intended to appropriate the entire line for a highway, and such was the intention of the owner, and such the intention of the public authorities, as evidenced by their acts, then the entire line would become a highway. But if, on the contrary, only upon a certain portion of it statutory labor was performed, and only upon a certain portion work was done, that portion only, under this dedication, would become a public highway, and the remainder of it would be simply an offer to dedicate, never accepted by the public authorities. Now, you have the particular place alleged to have been trespassed upon. Did that ever become a public highway? Did the public authorities ever accept that certain portion of the premises alleged to have been trespassed upon? They never did accept it formally; and, if they have accepted it, under the evidence in this case, it must be determined by the facts and circumstances surrounding this transaction, as evidenced by what they did upon the land. Did they ever perform any statute labor upon it? Have they, from the time of the dedication, up to and including the time of the alleged trespass, performed statutory labor upon it? And has it ever been in such a condition that the public could use it? Have they ever done any acts towards or with reference to it that would indicate that the public authorities intended to make that portion of the land trespassed upon passable and fit for the purposes of a public

highway? These are questions for you to determine, from the evidence in the case; and, unless you believe, from the evidence, that they did, then that certain portion never became a public highway.

"There is another mode of creating a highway, under the statute, in this State, and that is by user. But, to constitute a highway by user, there must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used, for 10 consecutive years, without interruption. It must be such a road that the public have exclusive possession of, as against the owner of the soil or any other person,—the exclusive right. If it is a public highway, the public authorities have the exclusive use and control of it; if it is not, they have not. And, to constitute a public highway by user, the particular portion of the premises alleged to have been trespassed upon must have been used by the public as a highway for 10 consecutive years, before it would become a highway by user. It must be open; it must be notorious; it must be accepted by the public generally; it must be traveled upon as a public highway, and the possession of the public must be exclusive, so that, if any person entered upon the premises and sought to use it in a manner other than as a public highway, the public authorities would have an action against such person for trespass upon the road.

"Did this highway, under this rule that I have given you, ever become a highway by user? Did it become a highway in any manner? It is not claimed by this party defendant here that the road was ever legally laid out. There was never any statutory dedication of the road. Now, the testimony is undisputed, as I have before said to you, that the northerly end of this road was opened up, and was used, and was worked upon, and that highway labor was expended upon it every year, and, as to that certain portion of the road, there is no question about its being a public highway. The other end of the road, that next to the section line, as indicated upon the map,—certain highway labor was performed upon that, and a certain portion of that end of the road became a public highway, and the trespass, however, was committed, and the ditch that was dug upon the land, came to within 20 rods of this cottage. In other words, the end of the ditch was 20 rods south, or about that distance, from this cottage. About that point the alleged

trespass was committed. Was that ever a public high-
way by dedication, user, or by any other mode? Was it
ever worked upon? Was it ever traveled over? Did it
ever become a public highway? Take into consideration
the surface of the ground. Was it capable, even, of being
traveled over as a public highway, at any time, from 1878
down? If it was not, and there is nothing in the evi-
dence to indicate that the public so regarded it, and so
used it, and so traveled it, and so worked it, then it
was not a public highway, and these plaintiffs would be
entitled to your verdict for six cents. Upon that question
of fact, and that alone, depends your verdict in this case;
and you must determine that from the evidence alone, un-
influenced by anything that may have been said or done
outside of the evidence. Mr. Meeuwenberg, acting in the
capacity of a highway commissioner, was the agent of
the township. He had charge of the roads, and was act-
ing for the general public with reference to the roads
in the township; and if, at the time he entered upon the
land in question, at the point which he entered, if that
portion of the premises was at that time a public highway,
created in any manner, or in the several manners, or
in any one of them, that I have called your attention to,
then Mr. Meeuwenberg had a right to enter the close,
and he had a better right to the possession than these
plaintiffs. But, if this certain land, designated by the
map, which was inclosed by these plaintiffs, at the very
point that Mr. Meeuwenberg entered (if he did, and
did this work), if that particular portion of the premises
was not, on the 11th day of August, 1894, the day that
he says he went upon the land,—if it was not then a public
highway, and used by the public as such, or capable of
being used by the public as such, then Mr. Meeuwenberg
did a wrong, and your verdict should be in favor of the
plaintiffs for six cents damages."

The facts that controlled the case were disputed facts;
the plaintiffs claiming one thing, and the defendant
another. The charge of the trial judge was fully as
favorable as the plaintiffs were entitled to have it. It
was a fair and full presentation of the law, in all its
phases, applicable to this case. We shall not discuss the
cases, but content ourselves with citing some of them.
*People* v. *Jones*, 6 Mich. 176; *Baker* v. *Johnston*, 21

Mich. 340; *City of Detroit* v. *Detroit & M. R. Co.*, 23 Mich. 173, and cases there cited; *Village of Grandville* v. *Jenison*, 84 Mich. 66; *Wayne County Savings Bank* v. *Stockwell*, 84 Mich. 586; *Ruddiman* v. *Taylor*, 95 Mich. 550.

The judgment is affirmed, with costs.

The other Justices concurred.