PEARL v TORCH LAKE TOWNSHIP

ANTRIM COUNTY ROAD COMMISSION v SIKKEMA

1. DEDICATION—COMMON-LAW DEDICATION—INTENT—ACCEPTANCE—HIGHWAYS.

The owner of land must set apart for such purpose so much of the land as he intends to be appropriated, and must give it over to the public with the intention that it be used as such, and there must be an acceptance thereof by the public in order to constitute a common-law dedication of land for a highway.

2. HIGHWAYS—USE AND OCCUPATION—DEFINED LINES—PUBLIC TRAVEL—OPEN POSSESSION—PERMISSIVE USE—HOSTILE ACTS—NOTICE.

There must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive in order to constitute a highway by user; the use required by statute to make a way a public highway by user is more than permissive and is one accompanied by some act on the part of the public authorities, open, notorious, and hostile to the private ownership, which gives the original owner notice that his title is denied.

3. HIGHWAYS—USE AND OCCUPATION—LOGGING ROADS.

The use of old logging roads by the public for many years after lumbering operations have ceased is insufficient to establish a public highway by user.

4. HIGHWAYS—USE AND OCCUPATION—USED PORTION—EVIDENCE—APPEAL AND ERROR—TRIAL COURT FINDINGS.

Privately owned land cannot become a public road by user beyond the portion used as such, and where the Court of Appeals has determined that the evidence presented at trial as to the length and width of a highway established by user

REFERENCES FOR POINTS IN HEADNOTES
[1] 23 Am Jur 2d, Dedication §§ 50–53.
[2–4] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 1, 191–272.

clearly preponderated in the opposite direction from the findings of the trial court, those findings should be reversed.

Appeal from Antrim, Raymond L. Smith, J. Submitted March 3, 1976, at Grand Rapids. (Docket Nos. 24128, 24129.) Decided September 27, 1976. Leave to appeal denied, 399 Mich 844.

Complaint by Dorothy Pearl, Margaret A. Bretz, and Dorothy J. Malasky against Torch Lake Township, the Board of County Road Commissioners of Antrim County, and the County of Antrim for injunction to restrain the construction of a public road. The Department of Natural Resources intervened as a party defendant and Torch Lake Township and Antrim County were dismissed as parties. Gilbert J. Shelby and Katherine Shelby intervened as defendants. Complaint by Antrim County Road Commission, Torch Lake Township, Antrim County and the Department of Natural Resources against Donald Sikkema and Sally Sikkema for injunction to restrain them from building on the claimed public road. The cases were consolidated for trial. Judgment for Torch Lake Township, the Board of County Road Commissioners of Antrim County, the Department of Natural Resources, Antrim County, and Gilbert and Katherine Shelby. The remaining parties moved to set aside the judgment. Motion denied. They appeal. Reversed in part and remanded.

*Zerafa, Zerafa & Christian, P. C.,* for plaintiff Dorothy Pearl.

*Ryan, Jamieson & Hubbell,* for plaintiff Margaret Ann Bretz.

*Aylsworth, Kronk & Foresman,* for Gilbert and Katherine Shelby.

*Harry T. Cook,* for the Antrim County Road Commission.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Russell E. Prins,* Assistants Attorney General, for the Department of Natural Resources.

Before: D. E. HOLBROOK, P. J., and R. B. BURNS and ALLEN, JJ.

D. E. HOLBROOK, P. J. This action (case No. 633) was brought by Dorothy Pearl, and her daughters, Margaret Ann Bretz and Dorothy J. Malasky, plaintiffs, against the Township of Torch Lake, the Antrim County Road Commission and Antrim County, defendants, on the fourteenth day of May 1969, to restrain the defendants from constructing a public road over plaintiffs' land, described as the West 33 feet of Sec. 7, T 31 N, R 8 W, and also the North 485.61 feet of the East 33 feet of Sec. 12, T 31 N, R 9 W, and to declare that the defendants have no rights in and to a private road over this description. Subsequent to the commencement of the action, the state Department of Natural Resources intervened as a party-defendant, and the Township of Torch Lake and the County of Antrim were dismissed as parties-defendants by mutual consent of all parties to the action. Defendants answered the plaintiffs' complaint, denying that the road in question was a private road, and asserting affirmatively that the road was a public road and had been such for upwards of 30 years. A petition was filed October 16, 1970, by Gilbert J. Shelby and Katherine Shelby, owners of property in Government Lot 1, Sec. 12, T 31 N, R 9 W, lying west of the subject road property, to intervene as parties-defendants, claiming the subject road was a

public road, and used by them to reach their property. The Shelbys were permitted to intervene and thereafter participated in all the proceedings.

On July 28, 1970, the defendants in trial court case No. 633 commenced suit against Donald Sikkema and Sally Sikkema as defendants (case No. 808) to restrain them from building on a part of the east 33 feet of the claimed public road in question, the said building being on property lying south of 504.75 feet south of the northeast corner of Sec. 12, T 31 N, R 9 W. The Sikkemas answered the complaint of plaintiffs, stating that where they were building was on land not used as a road either public or private. Further, they claimed to own the fee title. They did admit they had failed to obtain a building permit as required by county ordinance.

Pursuant to a proper motion the two cases (633 and 808) were consolidated for trial and decision.

The cases were heard in the circuit court on July 9 and 10, 1973. Many witnesses on behalf of the various parties testified. The trial judge viewed the premises. The parties then filed briefs and a decision was rendered and filed on January 3, 1974.

The trial court properly ruled that plaintiffs in case No. 633 and the defendants in case No. 808 were the fee owners of the land in question. The trial court further stated in its opinion as follows:

"In 1919 Norton and Dorothy Pearl acquired their property on Pearl Road. Prior thereto Norton Pearl's father, John Pearl, owned property adjacent to the road. The Pearl family was well known and highly respected in the community.

"Prior to the turn of the century Pearl Road was used as a means of ingress and egress from M-88 and U.S. 31 to Torch Lake and properties located on the

lake west of Peal Road. A dock was located on the lake at the end of the road and used for loading and unloading lumber and produce and for passengers for the excursion boat that plied the waters of Torch Lake. Pearl Road was used by a shingle mill and grist mill located on the water's edge west of the dock.

"By the year 1903 the dock was no longer in exis- tance *[sic]*. Its remains are visible to this day. Pearl Road continued to be used by farmers who hauled water when needed, to haul ice from the lake, and by fishermen, bathers and picnickers. Since 1939 the Gil- bert Shelby family has used the road to get to their home located west on the lake. The Hendershot family likewise uses the road to gain entrance to their prop- erty.

"The first evidence of expenditure of public funds on Pearl Road comes from Township records indicating that some work was done on the road in 1927 and paid for by the Township. There is some indication that some Township records were burned when the Clerk's home was destroyed by fire and this may explain why there are no earlier records. The testimony of William Drogt establishes that in June and July, 1929, Pearl Road was widened to 66 feet and because of the marshy condition of the land surrounding it, ditches were placed on both sides down to Torch Lake so that it would drain into the lake. Mr. Drogt further testified that he and others, as employees of the Township, installed culverts, put down gravel, and widened the roadbed so that vehicles could pass. At this time several occupied dwellings faced Pearl Road and a church was located on the Northwest corner of M-88 and Pearl Road.

"In 1936 Pearl Road was taken over by the Antrim County Road Commission under the McNitt Act and thereafter the County Road Commission exercised juris- diction over it. The evidence is convincing that the County inspected the road annually, graded it when needed, graveled it when needed, and mowed the shoul- ders. There is further evidence that the County brushed out the sides and cleaned the ditches at various times.

"Likewise there is evidence that Norton Pearl alone, and sometimes with the assistance of Gilbert Shelby,

Mr. Hendershot and others would keep the ditches cleaned and would work on the road. It is claimed by the Pearl family that Norton Pearl paid for gravel that he placed on the road. There is no evidence that any public official had any knowledge of this activity. Mr. Hendershot testified that he thought it was a public road until 1944, but failed to indicate why he changed his mind. Mr. Shelby considers the road to be public.

"On several occasions members of the Pearl family would stop a Road Commission employee working on the road and request that he desist. The employee would stop his work and report the matter to his superior. In spite of this the county continued to work on the road until the year 1969 when suit was commenced.

"In 1948 Otto Bretz, husband of plaintiff Margaret Ann Bretz, went to the Road Commission garage and informed someone there that Pearl Road was a private road and requested proof that it was public. It would seem from this incident that the Pearl family had ample evidence that the County Road Commission claimed jurisdiction over the road.

"The record supports the finding that some members of the public were asked to leave the beach at the end of the road and denied the use of the road but there is ample evidence that many members of the public used the road and beach without warning. There is also evidence that when obstructions were found in the road by Township or County officials they were removed.

"In 1960 Norton Pearl died. In 1962 a monument to his memory was erected by the Pearl family on the Northwest corner of Pearl Road within the 66 foot right of way. Prior to 1964 the Pearl family were summer residents in this community, Norton Pearl being employed in the public school system in Wayne County, Michigan, and the daughters having their permanent residences elsewhere. In 1964 Dorothy Pearl moved into her home on Pearl Road and has resided there continuously since.

"In the opinion of the court the record sustains a finding that the public has used the road for more than sixty years and the Township and County officials have

exercised jurisdiction over the road by maintaining it and expending public funds on it to an extent that it was apparent to all concerned that Pearl Road was included in the public road system of Antrim County.

"Pearl Road is situated in a sparsely settled community, except for the summer months, and its use by the public and its semi-rustic condition reflects the fact that it stub-ends at the lake and is limited as to the number of people it can accomodate *[sic]*. The rule set forth in *Village of Grandville v Jenison,* 84 Mich 54, [47 NW 600 (1890)] would be appropriate.

"The court is of the further opinion that Pearl Road runs to the water of Torch Lake. At least as far back as 1929 a drainage system was installed and maintained by the Township, County and others including the entire 66 feet down to the lake. Outside of the bunkhouse built by the Sikkemas in 1970 on the west 33 feet of the south end of the road there has been no building or extended private use of the beach area that would put the public officials on notice that there might be a controversy. When the Sikkemas put up their building it invoked prompt action by the Road Commission.

"Accordingly the Antrim County Road Commission may present to the court a judgment establishing the road in question as a public road and requiring the Sikkemas to remove the building and any other private obstruction they may have installed on the right of way in question, and enjoining them from further obstructing Pearl Road. No costs, a public question being involved."

On January 28, 1974, plaintiffs-appellants in case No. 633 and on January 16, 1974, defendants-appellants in case No. 806 filed motions to set aside the judgments in the cases and further for a new trial, claiming errors in the trial court's decision in the same particulars as raised on these appeals.

The trial court heard oral argument and received briefs from the respective parties and in a written opinion filed on April 14, 1975, denied the

motions. Appellants appeal asserting error on the part of the trial court in determining that (1) appellees established that Pearl Lane or Pearl Road was a public highway, (2) in further determining that said highway extended to the water's edge of Torch Lake, and, (3) that said highway was 66 feet wide.

In the opinion of the learned trial judge, it was determined that appellants were the fee owners of the land in question. It was further undisputed that said fee owners never platted the land dedicating the subject property for road purposes nor did they ever make any other written dedication of the subject land for highway purposes to the public or to any public authority. We now consider whether they ever made a common-law dedication. In *Missaukee Lakes Land Co v Missaukee County Road Commission,* 333 Mich 372, 379; 53 NW2d 297, 300 (1952), it is stated in part:

" 'To constitute a common-law dedication of land for a highway, the owner of the land must set apart for such purpose so much of the land as he intends to be appropriated therefor, and must give it over to the public with the intention that it be used as such, and there must be an acceptance thereof by the public.' * * * *Alton v Meeuwenberg* (syllabi), 108 Mich 629 [66 NW 571 (1896)]."

The evidence in the record does not support any such common-law dedication. Therefore, we determine that the establishment of the said lane or road as a public highway was dependent upon appellees proving facts which satisfy the statutory provisions of MCLA 221.20; MSA 9.21, as a highway by user. This statute was interpreted in *Missaukee Lakes Land Co, supra,* 379; 53 NW2d at 300, as follows:

" 'To constitute a highway by user, there must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive.' *Alton v Meeuwenberg* (syllabi), 108 Mich 629 [66 NW 571 (1896)].

" 'The use required by the statute to make a way a public highway is one accompanied by some act on the part of the township authorities, open, notorious, and hostile to the private ownership, which gives the original owner notice that his title is denied.' *Murphey v Township of Lee* (syllabus), 239 Mich 551 [214 NW 957 (1927)]."

As provided in the statute, it is required, among other things, that said road must be used and worked upon by the public authorities for ten consecutive years without interruption and the possession thereof by the public must be open, notorious, and exclusive.

There was evidence that the Pearl family owned the subject property since before the turn of the century. Norton Pearl's father, John, was an owner of the land and he operated a sawmill and a grist mill on land near the subject road. This was approximately the year 1900 or thereabouts. The road had been used as a logging road and also used by John Pearl for his businesses, including a store located near the road. The Pearls were a part of the community of Eastport, which is and was a typical small community with many people using the area for recreational purposes during the summers. The Pearls were a part of this community of Eastport and had many friends and neighbors. Such neighbors and friends used this subject road or lane to go swimming and fishing in Torch Lake by expressed or implied permission of the Pearls. Permissive use is not sufficient to establish a road

by user. In *Bain v Fry,* 352 Mich 299, 305; 89 NW2d 485, 489 (1958), the Court stated:

"This use cannot be a mere permissive use by the general public however long continued. In order to make it a public highway the use must be so open, notorious and hostile as to be notice to the landowner that his title is denied."

Also, see, *Leelanau County Board of Road Commissioners v Bunek,* 344 Mich 605; 75 NW2d 51 (1956).

It has also been the law in this state that the use of old logging roads by the public for many years after lumbering operations have ceased is insufficient to establish a public highway by user. *Missaukee Lakes Land Co, supra,* 379; 53 NW2d at 300.

In reviewing the record we find that the first possible evidence of any act on behalf of a public authority to use and work upon the said road was in the year 1927 by the Township of Torch Lake. Defendants' Exhibit No. 1-B shows that the Torch Lake Township Road Commission on August 16, 1927, paid James Eison and Clarence Sweet for work performed on "Pearl Street, Eastport". It is not certain that the work so delineated was actually performed on the property in question, because there is a Pearl Street, north of M-88 designated as such by a county sign on M-88 pointing north. Exhibit No. 1-A shows that on June 21, 1929, the Torch Lake Township Road Commission expended funds for labor on "Pearl Street" and that further payments were made on July 2, 1929 and July 15, 1929 to various persons for work purportedly done on Pearl Street. One of these persons, William Drogt, Jr., was a witness at the trial who stated that the work in 1929 was per-

formed on the property in question. None of the other workers testified. Mr. Drogt stated that the road in question was worked upon from M-88 to the lake and to the width of 66 feet. He further stated that he did not work on the road either before or after that time. He was the son of the township road commissioner. Pursuant to the Mc-Nitt Act[1] the Antrim County Road Commission on April 13, 1936, certified the subject property as a part of the county road system. As of that date, the said road had not become a public highway by user because there was no evidence that the township had used and worked upon the road for ten consecutive years as required by the statute, and further the McNitt Act did not authorize the County Road Commission to take private roads into the public highway system. *Missaukee Lakes Land Co, supra,* 376; 53 NW2d at 299.

The law as to establishment of highways by user is limited as to width and length by the extent of the user for the prescribed time. In *Eager v State Highway Commissioner,* 376 Mich 148, 154; 136 NW2d 16, 18 (1965), it is stated:

"We agree with the trial court that privately owned land cannot become public road by user beyond the portion used as such merely by the above noted statutory pronouncement to that effect. To so hold would be violative of Const 1850, art 18, § 14, Const 1908, art 13, § 1, which prohibited taking by the public of private property except upon determination of necessity and just compensation 'being first made or secured'.[5]

"[5] For current provisions, see Const 1963, Art 10, § 2.—Reporter."

Also see, *In re Curzenski Estate,* 17 Mich App 447;

[1] 1931 PA 130; MCLA 247.1–247.13; MSA 9.141–9.153, repealed by 1951 PA 51.

169 NW2d 663 (1969), *aff'd* 384 Mich 334; 183 NW2d 220 (1971).

In reviewing this nonjury case this Court does not substitute its judgment on questions of fact, unless the evidence clearly preponderates in the opposite direction. *Insealator, Inc v Wallace,* 357 Mich 233, 248; 98 NW2d 643, 652 (1959). The trial court found that the road in question was established by user, and to the width of 66 feet and from M-88 to the shore of Torch Lake. After reviewing all the evidence in the case, we are constrained to rule that the subject road was not established by user for the entire length from M-88 to the shore of Torch Lake, and further, was not established to the width of 66 feet.

The trial was held in 1973, and many witnesses described the road as a two-track road from 1928 to the present time.

Mr. Shelby, acquainted with the area since 1938 and an intervenor and witness favorable to the County Road Commission, testified in part as follows:

"*Q. (Mr. Aylsworth, attorney for Mr. Shelby)* In 1938 would you describe to the court the appearance of this place in question, Pearl Road?

"*A.* Well, it wasn't really too different than it is at the present time except there wasn't as much brush growing on it then. It was a gravel road of about the same width as it is now.

"*Q.* Would it compare more favorably with 1969 than it does now?

"*A.* I beg your pardon?

"*Q.* In 1938 would it be comparable to what it was in 1969 at the time of the injunction?

"*A.* Oh, at the time of the injunction. Well, I don't think there was quite as much brush then. There may have been."

He further testified in general terms that the County Road Commission maintained the road to the width of 66 feet by grading it, placing gravel on it and brushing it out from time to time. However, when questioned specifically as to dates and times the subject work was done on the road, he was unable to give any dates except that in 1940 he saw county road employees brush out the road. This was the extent of the most favorable testimony of the work done on the road by the County Road Commission showing it to be 66 feet wide. There was a complete lack of testimony showing that the road went to the water's edge of Torch Lake.

The County Road Commission offered several witnesses, the same being employees and supervisors, to relate the work done on the subject road. We summarize the testimony of each such witness.

Mr. Mondue Thomas, a resident of Central Lake since 1930, was an employee of the County Road Commission from 1930 to 1970, except for four years from 1942 to 1946. He testified that he hauled gravel on the road five times prior to 1967. In reference to Exhibit No. 5, a picture of the area near the lake, he stated: "I went down a couple times to where the *driveway turned left,* and I had trouble turning around so I always backed out." (Emphasis supplied.) We note that the farthest east driveway south from M-88 is located according to Exhibit No. 7 not less than 200 feet north of the meander corner of Sec. 12, T 31 N, R 9 W (which is approximately 60 feet north of the lake-shore).

Mr. Paul Burnett, an employee of the County Road Commission from 1935 to 1968 as a laborer and truck driver, testified he mowed on Pearl Street for four years prior to 1947. From 1951 to

1968, he was supervisor in the Central Lake Branch and directed mowing, patching and smoothing of Pearl Street. From 1950 to 1968 he stated that he mowed Pearl Street every year and placed gravel on it and patched the road as necessary. Further, it was smoothed out on occasion as needed.

Mr. Harold Nyland, a member of the County Road Commission since 1968, testified that he went down the road in 1929, at which time it was a two-track road. He testified: "You wouldn't be able to pass anything on the road, but it was traversed quite a lot." They did not drive to the lake because of the condition of the road.

Mr. Richard Couture was an engineer for the County Road Commission for the 12 years previous to the trial and superintendent subsequent to the year 1967. He testified that the County Road Commission had no specific records on Pearl Street, just general records. He stated he ordered mowing, brushing, graveling and smoothing of the road from 1966 until the suit was started by the Pearls. He testified: "You couldn't drive all the way to the lake, but you could walk down to the shore." He said he traveled the road personally a dozen times. He ordered the men to brush out the road in May of 1969. (This action precipitated the bringing of this law suit by Mrs. Pearl and her daughters.)

Mr. Verl Wolgamott, an employee of the County Road Commission for 17 years, testified that he ran a mowing machine on the subject road from 1956 to 1962. He stated that he was stopped on one occasion by the Pearls in 1958 or 1959. His testimony indicates that he continued to work on the road subsequent thereto.

There is record testimony that the Pearls had on occasion stopped County Road Commission work-

ers from working on the subject road, claiming it was a private road. This situation continued until employees of the County Road Commission were ordered to work on the road which took place on a morning in May of 1969. Mrs. Dorothy Pearl, widow of Mr. Norton Pearl, in her testimony related as follows:

"*Q. (Mr. Richard J. Zerafa, plaintiffs' attorney)* Now Mrs. Pearl, directing your attention to the month of May in the year 1969, would you explain to the court what activity the county was carrying on in the property that came to your attention?

"*A.* One morning around 7:15 I was awakened by a chain saw going down toward the lake. I got up and didn't even dress. I went out on the lane and looked down the road. I could not see any county equipment, but I saw men with chain saws cutting down trees on property that I considered my own. Later on I found the highway truck in behind the trees on my property.

"*Q.* Would that be an Antrim County Road Commission truck?

"*A.* Yes.

"*Q.* Was that an orange truck?

"*A.* I think it was. And may I just add, it was only on my side of the lane, and the truth of the matter was it had all been brushed out before the chain saw began working.

"*Q.* Do you know who brushed it out?

"*A.* The Antrim County Road Commission workers.

"*Q.* When would that have occurred?

"*A.* That same morning before I was awakened at 7:15.

"*Q.* What action did you take, if any?

"*A.* I went right down the lane and spoke to each one of the workers and told them they were very much out of order; that this was a private road and I did not wish them to continue cutting trees. There was one large tree which it broke my heart to see down.

"*Q.* How large a tree was that?

"*A.* It had forty rings on the trunk of it.

"*Q.* Did you count those?

"*A.* Yes, I did, and others have counted them.

"*Q.* All right. I didn't mean to interrupt you.

"*A.* And as I went down and spoke to each one of them, one or two of them said 'Mrs. Pearl, we don't like to do this, but these are our orders.' "

Immediately thereafter this suit was started by Mrs. Pearl and her daughters and an injunction was issued, stopping further work on the road by the County Road Commission.

Mr. James W. Cochran, a practicing landscape architect, testified on behalf of the plaintiffs and a drawing, the same being Exhibit No. 7, that he made of the area in question was admitted. The large tree that Mrs. Pearl lamented being cut down on the morning in May of 1969 was located on the east side and within a few feet of the gravel portion of the subject road. It was about a hundred feet north of the last driveway from the north going east from the road. Exhibit 7 further shows various trees on both sides of the road close to the traveled portion thereof. It also shows a poplar grove about 50 feet from the lake and directly south of the traveled portion of the road, if extended. Mr. Cochran estimated the age of the said various trees as being from 35 to 75 years.

There was no evidence of any ditch digging on the part of the County Road Commission employees. Mr. Cochran stated he observed a ditch system established on the southern end of the road. The great preponderance of the evidence has convinced us that the ditch system was established and maintained by Mr. Norton Pearl. Mrs. Pearl testified: "I saw him [her husband] dig ditches on both sides of the lane for drainage." Mr. Norton Pearl's diary, which was admitted in evidence,

revealed that he mainly, and with the aid from other owners in the area, put in many, many hours cleaning out the ditches.

Mr. Cochran also testified that the width of the road was from 10 to 14 feet, and further, that a riding mower couldn't get off the shoulder of the road to cut the grass any further than he could keep his tires on the gravel.

We do not disturb the findings of the trial court to the effect that a highway by user as to Pearl Road has been established. MCLA 221.20; MSA 9.21. However, we are constrained to determine after review of all the evidence that it preponderates in the opposite direction as to the length and width of the road. We determine that the length of the road shall commence at the intersection of M-88 and the said Pearl Road, and run south towards the lake, but shall end 260 feet north of the water's edge of Torch Lake, and possibly better stated, said road shall end at a point 200 feet north of the meander corner, of Sec. 12, T 31 N, R 9 W.

Inasmuch as we determine that the road was not established to a width of 66 feet, and because the evidence is not clear as to how wide the road was maintained by the County Road Commission and used by the public, *i.e.,* by mowing the same, we remand to the circuit court for further proceedings to determine that fact, not inconsistent with this opinion. No costs, no party prevailing fully.