558 N.W.2d 232 (1996)
219 Mich. App. 718
Orville DONALDSON, Glenda Donaldson, and Walter Kosalski, Plaintiffs-Appellants,
v.
ALCONA COUNTY BOARD OF COUNTY ROAD COMMISSIONERS, Jessie Tucker, and Lorene Tucker, Defendants-Appellees.
Docket No. 182032.
Court of Appeals of Michigan.
Submitted June 11, 1996, at Detroit.
Decided November 8, 1996, at 9:00 a.m.
Released for Publication January 24, 1997.
*233 Anderson & Anderson and Associates, P.C. by Acie G. Anderson, III, and Rae Anne Anderson, Clarkston, for plaintiffs-appellants.
Gillard, Bauer, Mazrum, Florip, Smigelski & Gulden by James L. Mazrum, Alpena, for the Alcona County Board of County Road Commissioners.
Before GRIFFIN, P.J., and BANDSTRA and M. WARSHAWSKY,[*] JJ.
BANDSTRA, Judge.
Plaintiffs appeal as of right the Alcona Circuit Court order granting summary disposition to the Alcona County Board of County Road Commissioners (the road commission) and other defendants. We affirm.
Plaintiffs, Orville and Glenda Donaldson and Walter Kosalski, own two parcels of property north of a road that extends eastward off O'Donnell Road in Alcona County. The road is sand-based and unditched; it is approximately one-quarter mile in length. Defendants Jessie and Lorene Tucker also own property north of the road. The Donaldsons, Walter Kosalski, and the Tuckers each reside in homes on their respective properties. The only other property owner along the road is the United States Forest Service, which is not a party and which apparently has no interest in the resolution of this dispute. The road is a dead-end road and serves only the three houses owned by the parties.
The road is not shown on any deeds but simply exists upon the private property of the parties without benefit of easement, platting, or other legal status. It was apparently placed there by a predecessor in title before the parties purchased their property, without any involvement by the road commission.
For a number of decades, the road commission has maintained the road in a limited fashion, snowplowing in the winter and occasionally grading to keep the road in a reasonably passable condition. The road was maintained in this fashion because the road commission management was under the mistaken impression that the road was part of the county road system. However, in the early 1990s, a review of the records of the road commission indicated that the road had never been accepted into the system by the road commission. Further, upon inspection, the road was determined not to meet the standards for acceptance because of inadequate right of way, inadequate drainage, inadequate subbase, and inadequate gravel surface. For these reasons and also to eliminate the cost of maintaining this and a number of similar roads in Alcona County, a *234 decision was made that the road commission would no longer service the road, and plaintiffs were so informed. Plaintiffs filed this lawsuit to have the road declared a public highway under M.C.L. § 221.20; M.S.A. § 9.21 and to force the road commission to continue maintaining it. In contrast, the Tuckers joined as defendants and, in their answer to the complaint, took the position that "[y]ou can make it a public road if you move it off [our] property."
Following discovery and the submission of affidavits, plaintiffs moved for summary disposition. Pursuant to MCR 2.116(I)(2), the trial court granted summary disposition to defendants, reasoning both that plaintiffs did not have standing to bring this suit and that defendants were entitled to summary disposition under MCR 2.116(C)(10), there being no genuine issue regarding a material fact. Although we conclude that the trial court erred with respect to the standing question, we affirm its decision regarding the merits of plaintiffs' action.
Standing is a legal term denoting the existence of a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy. Detroit Fire Fighters Ass'n v. Detroit, 449 Mich. 629, 633, 643, 651, 537 N.W.2d 436 (1995). To have standing, a plaintiff must demonstrate a legally protected interest that is in jeopardy of being adversely affected and allege a sufficient personal stake in the outcome of the dispute to ensure that the controversy sought to be adjudicated will be presented in an adversarial setting that is capable of judicial resolution. Wortelboer v. Benzie Co., 212 Mich. App. 208, 214, 537 N.W.2d 603 (1995); Trout Unlimited, Muskegon White River Chapter v. City of White Cloud, 195 Mich.App. 343, 348, 489 N.W.2d 188 (1992).
In the present case, the trial court determined that plaintiffs did not have a sufficient personal stake in this matter, relying on Comstock v. Wheelock, 63 Mich.App. 195, 234 N.W.2d 448 (1975), a precedent the court found to be factually similar to the present matter. In Comstock, the defendants owned property that the general public had used for access to Long Lake for over seventy years. Id. at 196, 234 N.W.2d 448. They erected a boathouse on the property and signs forbidding the public from entering. Id. The plaintiffs, who were private citizens, filed suit attempting to have the defendants' property declared a public highway so that the public could continue to have access to the lake. Id. at 196-197, 234 N.W.2d 448. This Court found that the plaintiffs did not have standing because public-rights actions must be brought by public officials vested with such responsibility. Id. at 202, 234 N.W.2d 448. Further, the Court noted that the plaintiffs had no greater rights than the general public and, hence, had no standing to assert those rights. Id. at 203, 234 N.W.2d 448. Defendants rely upon Karrip v. Cannon Twp., 115 Mich.App. 726, 321 N.W.2d 690 (1982), a case with facts similar to Comstock, but with a different result with regard to the standing issue.
We find it unnecessary to determine whether Comstock is still controlling authority after Karrip. See, generally, 2 Cameron, Michigan Real Property Law (2d ed.), § 25.8, p. 1161. Both Comstock and Karrip involved members of the general public who sought to continue using property as a public highway, a situation different from that at issue here. Plaintiffs in this case are not members of the general public but, instead, own property along the contested road. They need the road to get to their homes and, if it is not maintained by the road commission, they will have to undertake that burden. These interests are unique to plaintiffs and not shared by members of the general public. In fact, plaintiffs' interests are contrary to the interests of the general public. If the road is maintained by the road commission, then it is the general public that must pay the maintenance expense. The road offers little benefit to other members of the public because it is a dead-end road that leads to only three houses. Because plaintiffs have a sufficient personal stake in the outcome of this litigation that differs from that of the general public, plaintiffs have standing to bring this action. Karrip, supra at 733-734, 321 N.W.2d 690; Comstock, supra at 202-203, 234 N.W.2d 448. The trial court erred in granting summary disposition to defendants with regard to the standing question.
*235 With respect to the merits, plaintiffs' complaint was based on the "highway by user" statute, M.C.L. § 221.20; M.S.A. § 9.21, which provides in pertinent part:
All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for ten years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used eight years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act.
Under this statute, it is insufficient if public use of a roadway is "a mere permissive use by the general public however long continued. In order to make it a public highway[,] the use must be so open, notorious and hostile as to be notice to the landowner that his title is denied." Bain v. Fry, 352 Mich. 299, 305, 89 N.W.2d 485 (1958); accord Missaukee Lakes Land Co. v. Missaukee Co. Rd Comm., 333 Mich. 372, 379, 53 N.W.2d 297 (1952); Murphey v. Lee Twp., 239 Mich. 551, 560-561, 214 N.W. 957 (1927). Other precedents substitute the requirement that a use must be "exclusive" instead of "hostile." Boone v. Antrim Co. Bd of Rd Comm'rs, 177 Mich.App. 688, 693, 442 N.W.2d 725 (1989); accord Dryfoos v. Maple Grove Twp., 363 Mich. 252, 255, 109 N.W.2d 811 (1961); DeWitt v. Roscommon Co. Rd Comm, 45 Mich. App. 579, 582, 207 N.W.2d 209 (1973). We conclude that these two terms are of similar import.[1] The trial court determined that, considering the undisputed facts in this case, this "hostility" or "exclusive" requirement could not be satisfied and that defendants were entitled to summary disposition under MCR 2.116(C)(10). We agree.
An action is "exclusive" if it "excludes" something, meaning that it "shut[s] out," "bar[s]," or "disregard[s]" something. The American Heritage Dictionary (2nd College Ed., 1982). Similarly, an action is "hostile" if it treats something in an "antagonistic" manner. Id. In the present context, what might be excluded or treated with hostility is some property right of a landowner, to the extent that it is negated or diminished by a public authority's action. The case law applying the highway by user statute and comparable principles of adverse possession is replete with instances where actions by a public authority, the general public, or an adjoining landowner have been considered "exclusive" or "hostile" in a context where purported private property rights have been diminished or denied as a result. See, e.g., Indian Club v. Lake Co. Rd Comm'rs, 370 Mich. 87, 90, 120 N.W.2d 823 (1963) (one owner of a purportedly private road unlocked a gate in the face of complaints from members of the public who wanted to continue using the road); Gorte v. Dep't of Transportation, 202 Mich. App. 161, 164, 507 N.W.2d 797 (1993) (adverse possessors maintained disputed land, ejected trespassers, and rejected the defendant's notice that the parcel was stateowned); DeGroot v. Barber, 198 Mich.App. 48, 53, 497 N.W.2d 530 (1993) (adverse possessors posted no trespassing signs and actively denied the defendants use of the disputed parcel).
With a different set of facts surrounding roadway maintenance activities, those activities could constitute actions that would be "hostile" against or "exclusive" of private property rights. For example, the road commission might have purchased a parcel of property from the United States Forest Service for use as a public park and maintained the road as a means of public access to that park. In so doing, the road commission's actions would clearly have encouraged and facilitated public use of the roadway to the diminishment of adjoining landowners' rights *236 to restrict public use of the roadway and peacefully enjoy it as a private road.
In the present case, plaintiffs can point to no comparable denial or diminishment of their right to use the roadway as a result of the road commission's maintenance activities. Quite to the contrary, the road commission's activity in grading and plowing the road enhanced plaintiffs' rights to use it for their own purposes, i.e., to secure access to their residences. During the years that the road commission graded and plowed the contested road, plaintiffs received a benefit. Because the road commission maintained the roadway, plaintiffs avoided the cost of maintaining it themselves. The road commission was, in effect, doing plaintiffs a favor, and they cannot now argue that these favorable actions were in derogation of their private rights.[2] No reasonable mind could conclude that the "exclusive/hostile" requirement was satisfied under the uncontested facts in this case; summary disposition was properly granted to defendants.[3]
We affirm.
M. WARSHAWSKY, J., concurred.
GRIFFIN, Presiding Judge (dissenting).
I respectfully dissent. I agree with the majority that plaintiffs possess standing and that the circuit court erred in ruling otherwise. However, I would hold that evidence that defendant road commission continuously plowed and periodically graded the road for approximately forty years presents a genuine issue of material fact whether the road became a public highway under Michigan's highway by user statute, M.C.L. § 221.20; M.S.A. § 9.21. I would reverse and remand for further proceedings.

I
The circuit court erred in ruling that plaintiffs lack standing to pursue this matter. I would adopt and follow the principles of standing as set forth in Karrip v. Cannon Twp., 115 Mich.App. 726, 321 N.W.2d 690 (1982). To the extent that Comstock v. Wheelock, 63 Mich.App. 195, 234 N.W.2d 448 (1975), is inconsistent with Karrip, I would overrule Comstock.

II
Viewing the facts in a light most favorable to plaintiffs, the present matter appears to be a classic case of prescription. Under a mistaken claim of right, defendant road commission used and maintained the road for forty years as if it were a public road.
The circuit court erroneously ruled as a matter of law that the highway by user statute is inapplicable when landowners permit public authorities to maintain a road. Private roads may be appropriated for public use through either "common law dedication" or "highway by user." Missaukee Lakes Land Co. v. Missaukee Co. Rd Comm, 333 Mich. 372, 379, 53 N.W.2d 297 (1952); Pearl v. Torch Lake Twp., 71 Mich.App. 298, 305, *237 248 N.W.2d 242 (1976). Where evidence of express dedication is lacking, the public may still acquire a road "by user": a doctrine through which dedication is implied through prescription. Murphey v. Lee Twp., 239 Mich. 551, 561, 214 N.W. 957 (1927); Irving v. Ford, 65 Mich. 241, 249, 32 N.W. 601 (1887); Rigoni v. Michigan Power Co., 131 Mich.App. 336, 343, 345 N.W.2d 918 (1984).
Under Michigan's highway by user statute, M.C.L. § 221.20; M.S.A. § 9.21, public use of a road, in itself, is insufficient to change a private road into a public highway. See Indian Club v. Lake Co. Rd Comm'rs, 370 Mich. 87, 89, 120 N.W.2d 823 (1963); Irving, supra at 250, 32 N.W. 601; Village of Bellaire v. Pankop, 37 Mich.App. 50, 55, 194 N.W.2d 379 (1971). Rather,
[t]o constitute a highway by user, there must be a defined line, and it [the road] must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive. [Bain v. Fry, 352 Mich. 299, 305, 89 N.W.2d 485 (1958). Citations omitted.]
Express dedication need not be proved, because dedication may be implied through the landowner's passive failure to object to the public's control of a road. See Chapman v. Sault Ste Marie, 146 Mich. 23, 28-29, 109 N.W. 53 (1906); Irving, supra at 249, 32 N.W. 601; see also DeWitt v. Roscommon Co. Rd Comm, 45 Mich.App. 579, 582, 207 N.W.2d 209 (1973). Accord Alton v. Meeuwenberg, 108 Mich. 629, 66 N.W. 571 (1896); Boone v. Antrim Co. Bd of Rd Comm'rs, 177 Mich.App. 688, 694, 442 N.W.2d 725 (1989); Rigoni, supra at 345, 345 N.W.2d 918. Additionally, the public authorities must accept the road. Indian Club, supra at 91, 120 N.W.2d 823; accord Dryfoos v. Maple Grove Twp., 363 Mich. 252, 255, 109 N.W.2d 811 (1961); Leelanau Co. Bd of Road Comm'rs v. Bunek, 344 Mich. 605, 612-613, 75 N.W.2d 51 (1956); Boone, supra at 694, 442 N.W.2d 725.

A
In order to qualify as being "open, notorious, and exclusive," the public use must be of a sufficient magnitude to place "the owner on notice that his title was being denied." Maghielse v. Crawford Co. Rd Comm, 47 Mich. App. 96, 98, 209 N.W.2d 330 (1973); accord Missaukee Lakes Land Co., supra at 379, 53 N.W.2d 297; Murphey, supra at 560-561, 214 N.W. 957; Stickley v. Sodus Twp., 131 Mich. 510, 515, 91 N.W. 745 (1902). In other words, highway by user can be established only if the public use
puts the landowner on notice that it is adverse to his title, and that he must interdict it somehow to protect his rights. Eager v. State Highway Comm'r [376 Mich. 148, 154-155, 136 N.W.2d 16 (1965)]. The use must somehow constitute an intrusion upon his property right inconsistent with his possession, i.e., it must be a trespass. [Rigoni, supra at 347, 345 N.W.2d 918.]
See also Alton, supra at 636, 66 N.W. 571.
In the present case, plaintiffs and predecessor landowners submitted testimony by affidavits that the road commission maintained the road by "plowing snow in the winter and grading in the spring, summer and fall sufficient to keep the road in a reasonably passable condition." Each affiant opined that the road commission's maintenance operations were "so open, notorious, and hostile as to be notice ... that our title was denied." Plaintiffs' factual assertions were corroborated by affidavits of former road commission employees who attested to plowing, grading, and maintaining the road.
In my view, the documentary evidence submitted by plaintiffs creates a genuine issue of material fact whether the public used and possessed the road openly, notoriously, and exclusively. It would indeed be unusual, if not highly improbable, for public officials to benevolently spend public money maintaining private roads for which the public claimed no interest. Thus, depending on the extent and nature of the public presence, the continuous public maintenance of the road could lead a reasonable landowner to believe that the public was asserting control. Cf. Rigoni, supra at 346, 345 N.W.2d 918. Because assertions of public control are inconsistent with private ownership, a landowner observing open, control-oriented public intrusions on a private road must take affirmative *238 measures to protect his rights or face the risk of losing the road pursuant to M.C.L. § 221.20; M.S.A. § 9.21. See Eager, supra at 154-155, 136 N.W.2d 16; Ellsworth v. Grand Rapids, 27 Mich. 250 (1873).
Where public control is inconsistent with private ownership, the extent to which the landowner permitted or welcomed the intervention is irrelevant. Highway by user requires that public use be inconsistent with the landowner's property rights, not that public use be harmful or unwanted. The fact that Michigan case law has consistently held that landowner-permitted public use, in itself, is insufficient to establish highway by user, see Bain, supra at 305, 89 N.W.2d 485; Chapman, supra at 29, 109 N.W. 53; Irving, supra at 250, 32 N.W. 601, does not compel a conclusion that permissive use is fatal to such an action. Indeed, the requirement that public use be open, notorious, and exclusive is to ensure that the landowner had notice of the public use. The majority's focus on the road commission's permissive use and benevolent intent ignores the fact that under the highway by user statute, dedication may be implied. Cf. Murphey, supra at 561, 214 N.W. 957; Chapman, supra at 28-29, 109 N.W. 53; Irving, supra at 249, 32 N.W. 601.

B
Similarly, acceptance may be accomplished formally or informally. Olsen v. Village of Grand Beach, 282 Mich. 364, 372, 276 N.W. 481 (1937); Village of Lakewood Club v. Rozek, 51 Mich.App. 602, 603, 215 N.W.2d 780 (1974).[1] Though mere permissive use, however long, is insufficient to show acceptance, Bain, supra at 305, 89 N.W.2d 485, informal acceptance can be established "through user or expenditures of public money for the repair, improvement and control of the highway." Hooker v. Grosse Pointe, 328 Mich. 621, 630, 44 N.W.2d 134 (1950); accord Rice v. Clare Co. Rd Comm, 346 Mich. 658, 665, 78 N.W.2d 651 (1956); Baker v. Roscommon Co. Rd Comm, 329 Mich. 671, 681, 46 N.W.2d 579 (1951); Olsen, supra at 370, 276 N.W. 481; Lakewood Club, supra at 603, 215 N.W.2d 780; see, generally, Kraus v. Gerrish Twp., 205 Mich.App. 25, 40, 517 N.W.2d 756 (1994). While "infrequent and minor maintenance" by the county will not make a highway public, see Keller v. Locke, 62 Mich.App. 591, 592-593, 233 N.W.2d 666 (1975); Maghielse, supra at 98-99, 209 N.W.2d 330, "[t]he acceptance need only be such as to keep the road in a reasonably passable condition." Boone, supra at 694, 442 N.W.2d 725, citing Indian Club, supra at 91, 120 N.W.2d 823; see also Crosby v. Greenville, 183 Mich. 452, 461, 150 N.W. 246 (1914).
Here, plaintiffs aver that, for over forty years, the road commission regularly dispatched road crews to the road for the purpose of maintaining the roadway in a reasonably passable condition. Although the significance, duration, and expense of the maintenance is in dispute, regular public expenditures of time and money to repair the road can signify implicit acceptance. See Indian Club, supra at 92-93, 120 N.W.2d 823; Schurtz v. Wescott, 286 Mich. 691, 696-697, 282 N.W. 870 (1938); St. Ignace v. McFarlane, 45 Mich.App. 81, 85, 206 N.W.2d 226 (1973). Thus, I would remand for a factual finding whether the road commission's intervention and control of the road was significant enough to constitute acceptance, e.g., whether the road commission regularly maintained the road so as to keep it in a passable condition, see, e.g., Olsen, supra at 372-373, 276 N.W. 481; Crosby, supra at 461, 150 N.W. 246; Baker, supra at 679-681, 46 N.W.2d 579; Hooker, supra at 628-631, 44 N.W.2d 134; Boone, supra at 694, 442 N.W.2d 725, or whether the public intervention was too infrequent or inconsequential to signify an assertion of public control. See, e.g., Snow v. Murphy, 248 Mich. 659, 227 N.W. 544 (1929); Reno v. Johnson, 224 Mich. 14, 194 N.W. 529 (1923); Maghielse, supra.
If plaintiffs can establish implicit public acceptance of the road, then there is no issue of undesired land being thrust on the public. Compare Kraus v. Dep't of Commerce, 451 *239 Mich. 420, 547 N.W.2d 870 (1996), citing Wayne Co. v. Miller, 31 Mich. 447, 449 (1875). Indeed, if the public has accepted a road, the property is in the public domain already.[2] See, generally, Rice, supra at 665, 78 N.W.2d 651.
For these reasons, I respectfully dissent. I would reverse and remand for further proceedings.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] Plaintiffs argue that, in "modern day cases," the previous "hostility" requirement has been weakened by language suggesting that the use as a public highway must be merely "exclusive." However, this is no modern-day development; an early precedent construing the statute required that the possession by the public must be open, notorious, and "exclusive." Alton v. Meeuwenberg, 108 Mich. 629, 636, 66 N.W. 571 (1896). It appears that, over the years, the "hostility" and "exclusive" language has been used interchangeably, suggesting that the two terms require the same thing. The public use must be "hostile" to the private rights of landowners, meaning that those rights are being "excluded" or denied.
[2] We do not focus on the "benevolent intent" of the road commission as suggested by the dissent; rather, our focus is on the benevolent effect that the road commission's activity had on plaintiffs' property rights. Because the effect was benevolent, the "exclusive" or "hostile" requirement was not satisfied.
[3] We thus conclude that, under the facts of this case, the hostility requirement for application of the highway by user statute was not satisfied. However, we also question whether the statute could ever be appropriately applied, in effect, to force a public authority to accept a road as a public highway. We found no precedents in which the statute was so applied. As the trial court and the parties in the present case acknowledged, the statute is generally used by public authorities to designate roadways as public highways, over the objections of adjoining property owners who would rather have the roadways remain private roads. The statutory context of the highway by user statute suggests that it should not be used to foist public highway responsibilities upon road commissions without their consent. A township may begin proceedings to declare a road a public highway only "with the prior written consent of the board of county road commissioners" M.C.L. § 221.20a; M.S.A. § 9.21(1), and roads determined to be public highways must be improved by the township to standards established by the county road commission, M.C.L. § 221.20g; M.S.A. § 9.21(7). Further, our Supreme Court has long recognized that it is "necessary to prevent the public from becoming responsible for land that it did not want or need" and that "it is ... fundamental that private property cannot be forced on a public authority without its consent." Kraus v. Dep't of Commerce, 451 Mich. 420, 424, 429, 547 N.W.2d 870 (1996).
[1] I recognize that the cited cases discuss acceptance in the context of common-law dedication. However, because highway by user is an alternative means to show the dedication element of common-law dedication and each doctrine requires public acceptance, I see no reason to distinguish between the two doctrines regarding the standard for implied acceptance.
[2] I do not address the potential issue whether the county can unwittingly accept a road through unauthorized actions of road commission employees because the facts necessary to resolve the issue remain undetermined.